## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11**<br>**Case No. 02-12334 (PCB)** |
| **VERO ELECTRONICS, INC. and** | : | |
| **APW LTD.,** | | **(Jointly Administered)** |
| **Debtors.** | : | |

-----------------------------------------------------------------x

## ORDER (1) APPROVING (a) DEBTORS' DISCLOSURE STATEMENT, (b) SOLICITATION OF VOTES AND VOTING PROCEDURES, AND (c) FORMS OF BALLOTS, AND (2) FINDING NON-MATERIALITY OF PLAN MODIFICATIONS AND (3) CONFIRMING DEBTORS' AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION

Vero Electronics, Inc. ("Vero") and APW Ltd. ("APW," and together with Vero, the "Debtors"), as "proponents of the plan" within the meaning of section 1129 of title 11, United States Code (the "Bankruptcy Code"), having filed with the Court the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated May 3, 2002 (the "Plan"), the Debtors' Amended and Restated Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated June 19, 2002, as modified on July 23, 2002 (said plan, as modified, the "Amended Plan"), a copy of which is annexed hereto as Exhibit "A;"[1] the Debtors' Disclosure Statement with respect to the Plan dated May 3, 2002 (the "Disclosure Statement"), and the Debtors' Supplement to the Disclosure Statement with respect to the Amended Plan, dated June

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Amended Plan. Any term used in the Amended Plan or this Confirmation Order that is not defined in the Amended Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

19, 2002 (the "Supplement"); and the Court having entered an Order Fixing Time, Date, and Place and Prescribing Form of Notice Thereof for (i) Hearing to Consider Approval of Debtors' (a) Disclosure Statement, (b) Solicitation of Votes and Voting Procedures, (c) Forms of Ballots, and (d) Request for a Finding of Nonmaterial Plan Modification and (ii) Hearing to Consider Confirmation of Debtors' Amended and Restated Joint Plan of Reorganization, dated June 19, 2002 (the "Scheduling Order"), fixing July 23, 2002, at 2:30 p.m. as the date and time of the hearing (the "Hearing") pursuant to sections 1125 and 1126(b) of the Bankruptcy Code and Fed. R. Bankr. P. 3017 and 3018(b) to consider approval of the Disclosure Statement, the voting procedures employed by the Debtors pursuant thereto, and the forms of ballots used in connection therewith, and confirmation of the Amended Plan; and the Debtors having filed the Affidavit of Mailing by InnisFree M&A Incorporated, dated May 15, 2002 (the "InnisFree Certification"), relating to the service of the Plan, Disclosure Statement and related solicitation materials, the affidavit of Michael Garris, dated June 21, 2002 (the "Garris Affidavit), relating to the service of the Amended Plan and Supplement to the Disclosure Statement, the certification, dated June 26, 2002, of publication in *The Wall Street Journal,* (National Edition) of notice of the Hearing, (the "Publication Certification"), and the Certification of Richard D. Carroll in Support of (i) Approval of (a) Debtors' Disclosure Statement, (b) Solicitation of Votes and Voting Procedures, (c) Forms of Ballots, and (d) Request for a Finding of Nonmaterial Plan Modification, and (ii) Confirmation of Debtors' Amended and Restated Joint Plan of Reorganization, dated July 22, 2002 (the "Carroll Certification"), each having been filed with the Court; and the Debtors having filed plan supplements on July 18, 2002 (the "First Plan Supplement") and July 22, 2002 (the "Second Plan Supplement;" collectively with the First Plan Supplement, the "Plan Supplement"); and sufficient and proper notice of the Hearing having

been given to all holders of Claims against, and Equity Interests in, the Debtors and to other parties in interest, all in accordance with the Bankruptcy Code and the Bankruptcy Rules and the Scheduling Order, and it appearing that no other or further notice need be given; and the Hearing having been held by the Court on July 23, 2002; and no objections having been filed to the Disclosure Statement, the voting procedures, the form of ballots, a finding of non-materiality of plan modification or to confirmation of the Amended Plan; and the appearances of all interested parties having been noted in the record of the Hearing; and the Certification of Jane Sullivan Certifying the Tabulation of Votes with respect to the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, sworn to on May 15, 2002 (the "Vote Certification"), having been filed with the Court; and upon the record of, and the evidence adduced at, the Hearing and all proceedings had before the Court, the Plan, the Disclosure Statement, the InnisFree Certification, the Vote Certification, the Amended Plan, the Supplement, the Garris Affidavit, the Publication Certification, the Plan Supplement, the Carroll Certification, and all the other papers filed in support of the Amended Plan; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause therefor, it is hereby DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED:

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    Applicability.  The findings and conclusions set forth herein and in the record of the Hearing constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## **Jurisdiction, Venue, and Judicial Notice**

2. **Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).** This Court has jurisdiction over the Reorganization Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

3. **Judicial Notice.** This Court takes judicial notice of the docket of the Reorganization Cases maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Reorganization Cases, including, but not limited to, the hearings to consider the adequacy of the Disclosure Statement.

## **Disclosure Statement**

4. **Adequacy.** The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.

## **Voting**

5. **Manner.** As evidenced by the Vote Certification, votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and industry practice.

## Solicitation and Notice

6.     Solicitation.  The Plan, Disclosure Statement, and Ballots, in support of the confirmation of the Plan and notice of the Hearing were transmitted and served in compliance with the Bankruptcy Rules.  The forms of the Ballots and Master Ballot were sufficiently consistent with Official Form No. 14 and adequately addressed the particular needs of these chapter 11 cases and were appropriate for each class of claims or interests entitled under the Plan to vote to accept or reject the Plan.  The period set forth during which the Debtors solicited acceptances to the Plan was a reasonable period of time for creditors to make an informed decision to accept or reject the Plan.  As described in, and as evidenced by, the InnisFree Certification, the Garris Affidavit, the Carroll Certification and the Publication Certification, the solicitation, transmittal and service of the Plan, the Amended Plan, the Disclosure Statement, notice of the Hearing and publication of notice of the Confirmation Hearing were adequate and sufficient.

7.     Notice.  As is evidenced by the Innisfree Certification, the Garris Affidavit, and the Publication Certification, all parties required to be given notice of the Hearing (including the deadline for filing and serving objections to confirmation of the Amended Plan) have been given due, proper, timely, and adequate notice in accordance with the Bankruptcy Rules and have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

## The Amended Plan as a Modification to the Plan

8.     No Material Adverse Effect.  Subsequent to the Commencement Date, the Plan was modified by the Amended Plan.  The modifications to the Plan primarily relate to the implementation of the Plan, and do not materially adversely affect or change the treatment of any

Claims or Equity Interests from that which was provided for in the Plan. Moreover, the modifications to the Plan that were incorporated into the Amended Plan were fully and adequately disclosed in the Supplement, which was served on all creditors on or about June 20, 2002. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

9. Due and Sufficient Notice. In accordance with Bankruptcy Rule 3019, all holders of Claims against the Debtors who voted to accept the Plan are hereby deemed to have accepted the Amended Plan. No holder of a Claim against the Debtors who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the modification. The filing with the Court of the Amended Plan, and the Supplement on June 19, 2002, and the service of same on all creditors constitutes due and sufficient notice thereof.

**Technical Modifications to The Amended Plan**

10. Technical Amendments. The modifications to the Amended Plan set forth in the technical amendments (the "Technical Amendments"), attached hereto as Exhibit "B," constitute technical changes and do not materially adversely affect or change the treatment of any Claims or Equity Interests. Any other amendments to the Amended Plan made at the hearing comply in all respects with the requirements of section 1127 of the Bankruptcy Code. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity

Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

**Confirmation of The Amended Plan**

11.     Amended Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(l)). The Amended Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(l) of the Bankruptcy Code.

(a)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims and Priority Tax Claims, which need not be designated, the Amended Plan designates eight (8) Classes of Claims and Equity Interests (with two (2) subclasses within Class 5, two (2) subclasses within Class 6, and three (3) subclasses within Class 8. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Amended Plan, and such Classes do not unfairly discriminate between or among holders of Claims and Equity Interests. The Amended Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Section II.D of the Amended Plan specifies that Classes 1, 3, 4, and 6 and Subclass 8-B are unimpaired under the Amended Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Section II.D of the Amended Plan designates Classes 2 and 7 and Subclasses 5-A,5-B, 8-A and

8-C as impaired and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Amended Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of Amended Plan (11 U.S.C. § 1123(a)(5)).  The Amended Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Amended Plan's implementation, including the Working Capital Facility, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).  Section III.I.2 of the Amended Plan provides that the amended Certificate of Incorporation for Reorganized Vero, as well as the New Bye-Laws of Reorganized APW shall prohibit the issuance of nonvoting equity securities.  Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(g)     Designation of Directors (11 U.S.C. § 1123(a)(7)).  Section III.I.1 of the Amended Plan contains provisions with respect to the manner of selection of directors of Reorganized APW and Vero that are consistent with the interests of creditors, equity security holders, and public policy in accordance with section 1123(a)(7).

(h)     Additional Amended Plan Provisions (11 U.S.C. § 1123(b)).  The Amended Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(i)     Bankruptcy Rule 3016(a).  The Amended Plan is dated and identifies the

entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

12.     Debtors' Compliance with Bankruptcy Code (11 U.S.C.

§ 1129(a)(2)).  The Debtors have complied with the applicable provisions of the Bankruptcy

Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

(a)     The Debtors are proper debtors under section 109 of the Bankruptcy Code.

(b)     The Debtors have complied with applicable provisions of the Bankruptcy

Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

(c)     The Debtors have complied with the applicable provisions of the

Bankruptcy Code, and the Bankruptcy Rules in transmitting the Plan and the Amended Plan, the

Disclosure Statement and the Supplement, the Ballots, and related documents and notices and in

soliciting and tabulating votes on the Plan.

13.     Amended Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The

Debtors have proposed the Amended Plan in good faith and not by any means forbidden by law,

thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident

from the facts and records of these Reorganization Cases, the Disclosure Statement, the

Supplement, and the record of the Hearing and other proceedings held in these Reorganization

Cases.  The Amended Plan was proposed with the legitimate and honest purpose of maximizing

the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.

14.     Payments for Services or Costs and Expenses (11 U.S.C.

§ 1129(a)(4)).  Any payment made or to be made by any of the Debtors for services or for costs

and expenses in or in connection with the Reorganization Cases, or in connection with the

Amended Plan and incident to the Reorganization Cases, has been approved by, or is subject to

the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code. In this regard, APW and the Reorganized APW (as a direct beneficiary of the work performed by the JPLs and their professionals) are authorized to pay any reasonable fees, costs and expenses, including the fees, costs and expenses of the JPLs and their professionals relating to the Bermuda Proceeding, without further approval of this Court but subject to the applicable requirements of Bermuda law, the approval of the Bermuda Court, as the court supervising the Bermuda Proceeding, and such protocols or agreements that the JPLs, APW or Reorganized APW may enter into which afford APW and Reorganized APW the opportunity to review such fees, costs and expenses and to challenge the reasonableness thereof. Further, upon the Effective Date, APW or Reorganized APW is authorized, without further court approval, to reimburse Bank of America, as pre-petition Agent, BNP Paribas, Societe Generale, Royal Bank of Scotland and Oaktree Capital Management, LLC for their reasonable professional fees and expenses incurred in connection with the negotiations of the Amended Plan and the ancillary documents relating thereto, provided, however, that (a) payment of such fees shall first be made from retainers or advances made by, or on behalf of, the Debtors prior to the Commencement Date on account of any such fees and expenses, (b) the amount of such fees and expenses payable to BNP Paribas and Societe Generale shall be subject to a $250,000.00 cap; and (c) this Court shall retain jurisdiction to consider and adjudicate any disputes regarding the reasonableness of such fees and expenses.

15. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as initial directors or officers of the Reorganized Debtors after confirmation of the Amended Plan have been fully disclosed in the Carroll Certificate and at the

Hearing, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Reorganized Debtors and with public policy.

16.     No Rate Changes (11 U.S.C. § 1129(a)(6)).  After confirmation of the Amended Plan, the Debtors' businesses will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Reorganization Cases.

17.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The Amended Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis provided in the Disclosure Statement and other evidence proffered or adduced at the Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each holder of an impaired Claim or Equity Interest either has accepted the Amended Plan or will receive or retain under the Amended Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

18.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Classes 1, 3, and 4 of the Amended Plan are Classes of unimpaired Claims that are conclusively presumed to have accepted the Amended Plan under section 1126(f) of the Bankruptcy Code.  Class 2 and Subclasses 5-A and 5-B have voted to accept the Amended Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code.  Classes 7 and Subclasses 8-A and 8-C are impaired are deemed to have rejected the Amended Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) has not been satisfied with respect to the deemed

rejecting Classes identified above, the Amended Plan is confirmable because the Amended Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such classes.

19.        Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims and Priority Non-Tax Claims pursuant to Sections II.B and II.D of the Amended Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Section II.C of the Amended Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

20.        Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(l0)). At least one Class of Claims against the Debtors that is impaired under the Amended Plan has accepted the Amended Plan, determined without including any acceptance of the Amended Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

21.        Feasibility (11 U.S.C. § 1129(a)(11)). The evidence proffered or adduced at the Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that confirmation of the Amended Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

22.        Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Court will be paid pursuant to Section V.G of the Amended Plan, on the Effective Date or as soon as practicable thereafter, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

23.        Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The Debtors did not, either as of the Commencement Date or at any time during the chapter 11 cases, have

any plans, funds or programs providing or reimbursing retired employees and their spouses and

dependents for medical, surgical, or hospital care benefits, or benefits in the event of sickness,

accident, disability, or death.  Nonetheless, in the unlikely event that the Debtors are obligated to

pay any retiree benefits, section III.Q of the Amended Plan provides that, after the Effective

Date, the Reorganized Debtors will continue to pay "retiree benefits" (as defined in section

1114(a) of the Bankruptcy Code), if any, at the level established pursuant to section

1114(e)(1)(B) or 1114(g) at any time prior to confirmation of the Amended Plan, for the duration

of the period the Debtors have obligated themselves to provide such benefits.  Thus, the

requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

24.     Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)).  Class 7 and Subclasses 8-A and 8-C are deemed to reject the Amended Plan

(collectively, the "Rejecting Classes").  Based upon the evidence proffered, adduced, or

presented by the Debtors at the Hearing, the Amended Plan does not discriminate unfairly and is

fair and equitable with respect to the Rejecting Classes, as required by section 1129(b)(1) of the

Bankruptcy Code.  Thus, the Amended Plan may be confirmed notwithstanding the Debtors'

failure to satisfy section 1129(a)(8) of the Bankruptcy Code.  Upon confirmation and the

occurrence of the Effective Date, the Amended Plan shall be binding upon the members of the

Rejecting Classes.

25.     Principal Purpose of the Amended Plan (11 U.S.C. § 1129(d)).  The

principal purpose of the Amended Plan is not the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act of 1933.

26.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before

the Bankruptcy Court in these Reorganization Cases, the Debtors and each of their respective

affiliates, agents, representatives, members, principals, shareholders, directors, officers, employees, advisors, and attorneys have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and the Amended Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section III.T of the Amended Plan.

27.    <u>Assumption and Assignment or Rejection of Executory Contracts</u>.  Section III.P of the Amended Plan governing the assumption and assignment or rejection of executory contracts and unexpired leases satisfies the requirements of sections 365(a) and (b) of the Bankruptcy Code.  Pursuant to Section III.P.2 of the Amended Plan, any monetary amounts by which each executory contract and unexpired lease to be assumed by APW and assigned to AWP pursuant to the Amended Plan is in default, shall be satisfied pursuant to subsection 365(b) of the Bankruptcy Code by payment of the default amount in cash on the Effective Date, or on such other terms as the parties to such assumed executory contract or unexpired lease may agree.  In the event of a dispute regarding the amount of any cure payments, the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed by APW and assigned to AWP, or any other matter pertaining to assumption or assignment, the cure payments required by subsection 365(b) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption and/or assignment.

28.     Satisfaction of Confirmation Requirements.  The Amended Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

29.     Retention of Jurisdiction.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section V.F of the Amended Plan and section 1142 of the Bankruptcy Code.  Further, the Court shall retain jurisdiction as to those matters set forth in this Order.

DECREES

30.     Confirmation.  The Amended Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Amended Plan and the Plan Supplement are incorporated by reference into and are an integral part of the Amended Plan and this Confirmation Order.

31.     Amended Plan Classification Controlling.  The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Amended Plan shall be governed solely by the terms of the Amended Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Amended Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Amended Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Amended Plan for distribution purposes, and (c) shall not be binding on the Debtors or the Reorganized Debtors.

32.     Binding Effect.  The Amended Plan and its provisions shall be binding upon the Debtors and their successors and assigns, including, without limitation, AWP and any and all creditors and equity interest holders of the Debtors and their respective successors and

assigns, whether or not the claim or interest of any such creditor or equity interest holder is impaired or unimpaired under the Amended Plan and whether or not any such creditor or equity interest holder (a) voted for or against the Amended Plan, (b) objected or did not object to confirmation of the Amended Plan, or (c) otherwise participated or did not participate in the Reorganization Cases.

33.    Vesting of Assets (11 U.S.C. § 1141(b), (c)). Pursuant to section III.C of the Amended Plan, subject to the requirements of applicable Bermuda law and such other laws as may be applicable and the approval of the JPLs and, if required, of the Bermuda Court, as of the Effective Date, APW is authorized to transfer to AWP all of APW's assets as a successor-in-interest, including the right to the use of the name "APW Ltd.," free and clear of any and all liens, claims, encumbrances, and security interests, and interests of holders of claims and equity interests, except as provided in the Amended Plan, and shall assume all the liabilities of APW as provided in, and subject to the provisions of, the Amended Plan, including the indebtedness to be incurred or assumed under the New Secured Loan Agreement and the New Working Capital Facility. Concurrently with the consummation of the Amended Plan, Old APW is authorized to change its name to "BQX Ltd.," and AWP is authorized to change its name to "APW Ltd." Thus, pursuant to Section III.O of the Amended Plan, on the Effective Date, the assets of the Debtors and their estates shall vest in the Reorganized Debtors free and clear of any and all liens, claims, encumbrances and security interests, and interests of holders of claims and equity interests, except as provided in the Amended Plan. As of the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Amended Plan. The transfer of the assets, free and clear of any and all liens, claims,

encumbrances and security interests, and interests of holders of claims and equity interests, except as provided in the Amended Plan and the assumption of liabilities from Old APW to AWP, as provided in, and subject to, the terms of the Amended Plan, will be effected pursuant to the terms of the Amended Plan and be evidenced by the execution of the Assignment and Assumption Agreement, filed as Exhibit "M" to the First Plan Supplement (the "Assignment and Assumption Agreement"), and such other documents and agreements as Reorganized APW may deem appropriate and desirable.

34.     Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).  Pursuant to Section III.P of the Amended Plan, as of the Effective Date, all executory contracts and unexpired leases that exist between any of the Debtors and any other party are hereby specifically rejected (including those executory contracts and unexpired leases listed on Exhibit C to the Plan, as amended by the Plan Supplement), except for (a) any executory contracts or unexpired leases which are the subject of a motion to assume or reject which is pending on the date the Amended Plan is confirmed, which shall be assumed or rejected in accordance with the disposition of such motions and (b) the executory contracts and unexpired leases listed on Exhibit D to the Plan, as amended by the Plan Supplement, which, to the extent not previously assumed, assumed and assigned, or rejected pursuant to Court order, are specifically assumed by APW pursuant to the Amended Plan, as of the Effective Date (the "Assumed Contracts").  Entry of this Confirmation Order by the Clerk of the Court shall constitute (y) approval, pursuant to section 365 of the Bankruptcy Code, of such rejections or assumption and assignments, as applicable, pursuant to the Amended Plan and (z) the determination that, with respect to such assumptions and assignments pursuant to the Amended Plan, "adequate assurance of future performance" (within the meaning of section 365

of the Bankruptcy Code) by the Reorganized Debtors thereunder has been demonstrated and no further adequate assurance is required. In connection with the AWP Transactions and pursuant to the Amended Plan, the Confirmation Order or other orders of the Bankruptcy Court, all contracts assumed by APW hereunder, or under any other order of the Bankruptcy Court, are assigned to AWP, as of the Effective Date. The assumption of the contracts referred to shall be effected pursuant to the terms of the Amended Plan and may be evidenced by the execution of the Assignment and Assumption Agreement.

35.    Employee Benefit Plans. Pursuant to Section III.R of the Amended Plan, except as otherwise set forth in the Amended Plan, including as set forth in Exhibit "C" thereto, as amended by the Plan Supplement, or order by the Court, all employee benefit programs of the Debtors, as generally described in said section of the Amended Plan, as such programs may have been amended or modified, and the Debtors' obligations thereunder shall survive confirmation of the Amended Plan, remain unaffected thereby, and not be discharged, except that such programs of APW shall be deemed assigned to AWP.

36.    Bar Date for Rejection Damage Claims. Pursuant to Section III.P.4 of the Amended Plan, if the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to Section III.P.1 of the Amended Plan results in damages to the other party or parties to such contract or lease, a claim for such damages shall be forever barred from assertion and shall not be enforceable against the Debtors, their estates, the Reorganized Debtors and their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon the Debtors, or, on and after the Effective Date, the Reorganized Debtors, no later than 30 days after notice of entry of this Confirmation Order.

37. _General Authorizations_.  Each of the Debtors or Reorganized Debtors is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Amended Plan and any notes or securities issued pursuant to the Amended Plan.  The Debtors and the Reorganized Debtors and their respective directors, officers, members, agents, and attorneys, are authorized and empowered to issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, the documents contained in the Plan Supplement, as modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate, and consummate the Amended Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Amended Plan, and any release, amendment, or restatement of any memoranda of association, bye-laws, certificates of incorporation, by-laws, or other organization documents of the Debtors, whether or not specifically referred to in the Amended Plan or the Plan Supplement, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

38. _Corporate Action_.  Subject to the requirements of applicable Bermuda laws, Reorganized APW shall have adopted the new Bye-Laws, as of the Effective Date. Reorganized Vero shall file an amendment to its certificate of incorporation with the Secretary of the State of New York.  Such Bye-Laws and amendment of certificate of incorporation shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such Bye-

Laws and certificate of incorporation as permitted by applicable law. The Bye-Laws shall be deemed adopted by the board of directors of Reorganized APW as of the Effective Date.

39.      Issuance of New Securities. Subject to the requirements of applicable Bermuda law, pursuant to Section III.B of the Amended Plan, based upon the record of the Reorganization Cases, including the instruments included in the Plan Supplement (and any amendments thereto), the issuance of the APW Common Shares, the New Warrants and the DIP Facility Warrants (the "Plan Securities") by Reorganized APW are hereby authorized without further act or action under applicable law, regulation, order, or rule, and Reorganized APW is authorized to execute and deliver all documents, agreements, and instruments acceptable to it, and deliver all collateral, necessary or appropriate to effectuate the same.

40.      Incurrence of Indebtedness. Subject to the requirements of applicable Bermuda law, pursuant to Section III.E of the Amended Plan, based upon the record of the Reorganization Cases, including instruments included in the Plan Supplement (and any amendments hereto), the incurrence or assumption of indebtedness under the New Secured Loan Agreement and New Working Capital Facility by APW and Reorganized APW are hereby authorized without further act or action under applicable law, regulation, order, or rule, APW and Reorganized APW are authorized to execute and deliver all documents, agreements, and instruments acceptable to it, and deliver all collateral, necessary or appropriate to effectuate the same

41.      Securities Laws Exemption. To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offering, issuance, and distribution by Reorganized APW (as such term is defined in Section I.A.52 of the Amended Plan), of the APW Common Shares (as such term is defined in Section I.A.4 of the Amended

Plan), the New Secured Notes and the New Warrants are exempt from the provisions of section 5

of the Securities Act of 1933, as amended (the "Securities Act"), and any state or local law

requiring registration for the offer, issuance, distribution, or sale of a security. The offering,

issuance, and distribution by Reorganized APW of the DIP Facility Warrants are exempt from

the provisions of section 5 of the Securities Act and any state or local law requiring registration

for the offer, issuance, distribution, or sale of a security by reason of section 4(2) of the

Securities Act. The New Warrants, the New Secured Notes and the APW Common Shares

issuable under the Amended Plan will be freely tradable by the recipients thereof to the

maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-

bankruptcy law, including section 1145(b)(1) relating to the definition of an underwriter in

Section 2(11) of the Securities Act, and compliance with any applicable rules and regulations of

the Securities Exchange Commission.

       42.    **Exit Financing Facility**.

      (a)      The Debtors are authorized to enter into an amendment to the DIP

Facility, filed as Exhibit "L" to the First Plan Supplement, which, among other things, extends

the maturity past the Effective Date, thereby providing funding to the Reorganized Debtors after

the consummation of these Reorganized Cases (the "Exit Financing Facility"). The Exit

Financing Facility will be used to fund obligations under the Amended Plan, including the

payment of Administrative Expense Claims and financing the Reorganized Debtors' working

capital requirements. The Exit Financing Facility is in the amount of One Hundred and Ten

Million dollars ($110,000,000.00) and shall be subject to and governed by the terms and

conditions of the DIP Facility, as amended, and all loans and security documents executed and

delivered to the Lenders pursuant thereto. The Exit Financing Facility, all documents executed

and delivered and to be executed and delivered pursuant thereto, all indebtedness to be created thereunder, and all liens and security interests to be created, attached and perfected thereunder are authorized and approved by the Court and adjudicated as of the effective date and in favor of the Lenders, to be valid, perfected, enforceable, first and prior (subject only as to first priority to any permitted senior lien or security interest that the Lenders expressly approve in writing), or as set forth in the New Intercreditor Agreement.

(b)     In furtherance of the foregoing, the Reorganized Debtors and any other persons granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

43.     <u>Plan Supplement</u>.  The documents contained in the Plan Supplement and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtors, are authorized and approved, including, but not limited to: (a) Memorandum of Association of AWP Ltd., (b) Bye-Laws of AWP Ltd., (c) Amended and Restated Certificate of Vero Electronics, Inc., (d) Amended and Restated By-Laws of Vero Electronics, Inc., (e) DIP Facility Warrants, (f) New Secured Loan Agreement, (g) Shareholders Agreement, (h) New Warrants, (i) New Intercreditor Agreement, (j) New Management Option

Plan, (k) Amendment to DIP Facility to convert into the Exit Facility (as defined in the DIP Facility), (l) Assignment and Assumption Agreement between APW Ltd. and AWP Ltd., and (m) Payment Agreement, dated June 28, 2002, by and among APW Ltd., Applied Power Limited, APW Enclosure Systems Holding Limited, and National Westminster Bank PLC. Without need for further order or authorization of the Bankruptcy Court, the Debtors and Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Amended Plan.

44. Governmental Approvals Not Required. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Amended Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Amended Plan, the Disclosure Statement, the Supplement and any documents, instruments, or agreements, and any amendments or modifications thereto.

45. Exemption from Certain Taxes. Pursuant to section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer, or exchange of notes or equity securities under the Amended Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; and (c) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Amended Plan, including, without limitation, agreements of consolidation, restructuring, disposition, liquidation, or dissolution; deeds; bills of sale; and transfers of tangible property, will not be subject to any stamp tax, recording tax, personal property transfer tax, real estate transfer tax, sales or use tax, or other similar tax.

46.     Distributions Under the Plan.  Pursuant to Section III.N of the Amended Plan, except as otherwise provided in the Amended Plan, the DIP Facility in respect of the DIP Facility Warrants, or the Confirmation Order, distributions under the Amended Plan shall be made by Reorganized APW or its designee to the holders, as of the Record Date, of (i) allowed claims (a) at the addresses set forth on the Schedules unless superseded by proofs of claims or transfers of claims pursuant to Bankruptcy Rule 3001 or (b) at the last known addresses of such holders if the Debtors have been notified in writing of a change of address, and (ii) allowed equity interests, to the address maintained with the registrar or transfer agent for such equity interests.  All distributions under the Amended Plan to holders of Senior Credit Facilities Secured Claims (Class 2) and Senior Credit Facilities Deficiency Claims (Class 5) shall be made by Reorganized APW to the Agent Banks, which in turn, shall make the distributions to holders of such claims at the addresses last known to the Agent Banks.  Such distributions to the Agent Banks shall be in complete satisfaction and discharge of the Debtors' obligations to the holders of Senior Credit Facilities Secured Claims and claims under the Senior Credit Facilities.  All distributions of the New Warrants under the Amended Plan to holders of Equity Interests  (Class 8) shall be distributed by a warrant agent, to be appointed by the Reorganized Debtors, to all shareholders of record as of the Effective Date.  Such distributions by the warrant agent shall be in complete satisfaction and discharge of the Debtors' obligations to the holders of Equity Interests.

47.     Execution of Documents by Non-Debtors.  Each of the Agents and Senior Lenders under the Senior Credit Facility is obligated to execute the New Secured Loan Agreement.  Further, each of the DIP Lenders under the DIP Facility Agreement is obligated to execute the Warrant Agreement related to the New Warrants.

48.     Contribution/Merger/Dissolution of Corporate Entities and/or Related Business Assets.  Pursuant to Section II.A of the Amended Plan, On the Effective Date, subject to the requirements of applicable Bermuda law in respect of APW and the Reorganized APW, the following contributions, mergers and dissolutions may be effective and effectuated without any further action by the stockholders or directors of any of the Debtors, Reorganized Debtors or Old APW:

(a)     Any affiliate (or affiliate's business assets) of the Debtors may be contributed, merged or amalgamated into or with APW, Vero, Reorganized APW, Reorganized Vero, or any of their respective affiliates; and

(b)     Vero or Reorganized Vero may be dissolved.

49.     Shareholders Agreement.  Pursuant to Section III.K of the Amended Plan, the holders of APW Common Shares issued pursuant to the Amended Plan, as set forth in Exhibit "G" to the First Plan Supplement, and the DIP Facility Warrants will, by acceptance of such shares or warrants, be bound by the terms of the Shareholders Agreement to the maximum extent permitted by applicable law, including the Bankruptcy Code.

50.     Enforcement of Subordination.  Pursuant to section III.H of the Amended Plan, the Amended Plan takes into account the relative priority of the claims or equity interests in each class in connection with any Bankruptcy Code subordination provisions relating thereto. Accordingly, the confirmation of the Amended Plan shall permanently enjoin, effective as of the Effective Date, all enforcement or attempts to enforce any further rights with respect to the distributions under the Amended Plan other than enforcement by holders to receive such distribution in accordance with the Amended Plan.

51.     Discharge.  Pursuant to Section V.A of the Amended Plan, except as otherwise expressly specified in the Amended Plan, entry of this Confirmation Order acts as a discharge of all debts of, claims against, and liens on, the Debtors, their assets, and their properties, arising at any time before the entry of this Confirmation Order, regardless of whether a proof of claim therefor was filed, whether the claim is allowed, or whether the holder thereof votes to accept the Amended Plan or is entitled to receive a distribution thereunder.  Upon the entry of this Confirmation Order, any holder of such discharged claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, Old APW, AWP, or any of their respective assets or properties, any other or further claim or equity interest based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the date the Court enters this Confirmation Order; provided, however, that nothing contained in this Order or the Amended Plan shall be deemed to extinguish or cancel the equity interests in Old APW, and holders of such interests shall retain whatever rights and entitlements they may have in respect thereto solely with respect to Old APW.  Except as otherwise expressly specified in the Amended Plan, in accordance with section 524 of the Bankruptcy Code, the discharge provided by this section and section 1141 of the Bankruptcy Code, *inter alia*, acts as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset, or recover the claims discharged hereby.

52.     Exculpation, Injunction, and Limited Releases.  The exculpation, injunction and limited release provisions contained in sections III.T, U, and V of the Amended Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities.

53.　Termination of Injunctions and Automatic Stay.　All injunctions or stays arising under or entered during the Reorganization Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

54.　Reinstatement of Certain Lease Guaranty Claims.　Pursuant to Section II.D of the Amended Plan, on the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, each allowed claim in Class 4 shall be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, except to the extent that the APW or Reorganized APW, as the case may be, and the holder agree to a different treatment.

55.　Securities Litigation Claims.　As of the Effective Date, subject to the provisions of the Amended Plan, including without limitation the release and discharge provision thereof relating to APW's liability, if any, in respect of the Securities Litigation Claims, AWP (as such term is defined in Section I.A.6 of the Amended Plan), shall assume any and all obligations that APW otherwise would have had in connection with the litigation relating to such claims, including any obligation that APW would have had under APW's directors' and officers' liability policy, which is assumed and assigned to AWP under the Amended Plan.　Nothing herein shall be deemed to modify the treatment of the Securities Litigation Claims as provided in Section II.D of the Amended Plan.

56.　Surrender of Existing Securities.　Pursuant to Section III.G of the Amended Plan, except with respect to distributions to holders of the claims in Class 2 and the equity interests in subclass 8A, and unless waived by the Reorganized Debtors, as a condition to receiving any distribution under the Amended Plan, each holder of a promissory note, certificate,

or other instrument evidencing a claim must surrender such promissory note, certificate, or other instrument. Any holder of a claim that fails to (i) surrender such instrument and collateral or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the applicable Reorganized Debtor before the later to occur of (a) the second anniversary of the Effective Date and (b) six months following the date such holder's claim is allowed, shall be deemed to have forfeited all rights and claims with respect thereto, may not participate in any distribution under the Amended Plan on account thereof, and all amounts owing with respect to such allowed claim shall be retained by the applicable Reorganized Debtor.

**Compensation and Reimbursement**

57.     Final Fee Applications.  All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses (the "Final Fee Applications") incurred by the date that is forty-five (45) days after the Effective Date, or such later date as may be approved by the Court and (ii) shall be paid in full in such amounts as are allowed by the Bankruptcy Court after the date upon which the order relating to any such Administrative Expense Claim becomes a Final Order, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtors or, on and after the Effective Date, Reorganized APW.  Final Fee Applications shall be served on the Reorganized Debtors, the United States Trustee, the attorneys for the Senior Lenders, and the attorneys for the lenders under the Exit Financing Facility.  The Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred

after the Confirmation Date and until the Effective Date in the ordinary course and without the
need for Bankruptcy Court approval.

58.     Final Fee Hearing.  A hearing to consider Final Fee Applications shall be
held at such date and time as is hereinafter scheduled by the Court (the "Final Fee Hearing").
The Reorganized Debtors shall give notice of the Final Fee Hearing to each professional retained
pursuant to an order of the Court that is required to file a Fee Application, all parties who have
advised the Reorganized Debtors of their intention to file an application premised on their having
made a substantial contribution, the United States Trustee, the attorneys for the Senior Lenders
and for the lenders under the Exit Financing Facility. The Final Fee Hearing may be adjourned
without further notice other than an announcement at the Final Fee Hearing or an adjourned
Final Fee Hearing.

59.     Objections to Final Fee Applications.  Objections, if any, to any Final Fee
Applications shall be filed with the Court, together with proof of service thereof, and served
upon the applicant, the Reorganized Debtors, the attorneys for the Reorganized Debtors, the
United States Trustee, and the attorneys for the Senior Lenders and the lenders under the Exit
Financing Facility, so as to be received not later than 4:00 p.m. (Eastern) on the date that is seven
(7) days prior to the hearing on the Final Fee Applications.

**Miscellaneous**

60.     Nonoccurrence of Effective Date.  In the event that the Effective Date
does not occur, then (i) the Amended Plan, (ii) assumption or rejection of executory contracts or
unexpired leases pursuant to the Amended Plan, (iii) any document or agreement executed
pursuant to the Amended Plan, and (iv) any actions, releases, waivers, or injunctions authorized
by this Confirmation Order or any order in aid of consummation of the Amended Plan shall be

deemed null and void.  In such event, nothing contained in this Confirmation Order, any order in

aid of consummation of the Amended Plan, or the Amended Plan, and no acts taken in

preparation for consummation of the Amended Plan, (a) shall be deemed to constitute a waiver

or release of any Claims or Equity Interests by or against the Debtors or any other persons or

entities, to prejudice in any manner the rights of the Debtors or any person or entity in any

further proceedings involving the Debtors or otherwise, or to constitute an admission of any sort

by the Debtors or any other persons or entities as to any issue, or (b) shall be construed as a

finding of fact or conclusion of law in respect thereof.

61.     Waiver of 10-Day Stay Under Bankruptcy Rule 3020(e).  Pursuant to

Bankruptcy Rule 3020(e), the 10-day stay provision for confirmation orders is hereby waived

and dispensed with.  The Debtors are authorized to consummate the Amended Plan and the

transactions contemplated thereby upon satisfaction of the conditions set forth in Section IV.B of

the Amended Plan.

62.     Notice of Entry of Confirmation Order and Effective Date.  Within five

(5) Business Days following the occurrence of the Effective Date, the Reorganized Debtors shall

file and serve notice of entry of this Confirmation Order (the "Notice of Confirmation") pursuant

to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) and notice of the occurrence of the

Effective Date ("Notice of Effective Date") on all creditors and interest holders, the United

States Trustee, and other parties in interest, by causing Notice of Confirmation and Notice of

Effective Date to be delivered to such parties by first-class mail, postage prepaid.  The notice

described herein is adequate under the particular circumstances and no other or further notice is

necessary.  The Debtors also shall cause the Notice of Confirmation and Notice of Effective Date

to be published as promptly as practicable after the entry of this Confirmation Order once in The Wall Street Journal (National Edition).

63.     Binding Effect.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Amended Plan, and the Plan Supplement shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

64.     Severability.  Each term and provision of the Amended Plan, as it may have been altered or interpreted by the Bankruptcy Court, is valid and enforceable pursuant to its terms.

65.     Conflicts Between Order and Amended Plan.  To the extent of any inconsistency between the provisions of the Amended Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent unless expressly stated by further order of this Bankruptcy Court.

66.     Efficacy of Plan.  The failure to specifically include any particular provision of the Amended Plan in this Order shall not diminish or impair the efficacy of such provision, it being understood the intent of this Court that the Amended Plan be confirmed and approved in its entirety.

Dated:  July 23, 2002
        New York, New York
        **4:00 pm**

                                **/s/ Prudence Carter Beatty**
                                UNITED STATES BANKRUPTCY JUDGE

# TABLE OF CONTENTS

**Page**

FINDINGS OF FACT AND CONCLUSIONS OF LAW ............................................... 3

1.      Applicability ................................................................................................. 3

Jurisdiction, Venue, and Judicial Notice ................................................................ 4

2.      Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)) ........................................................................................................ 4

3.      Judicial Notice .............................................................................................. 4

Disclosure Statement .............................................................................................. 4

4.      Adequacy ...................................................................................................... 4

Voting ..................................................................................................................... 4

5.      Manner .......................................................................................................... 4

Solicitation and Notice ............................................................................................ 5

6.      Solicitation ................................................................................................... 5

7.      Notice ............................................................................................................ 5

The Amended Plan as a Modification to the Plan .................................................... 5

8.      No Material Adverse Effect .......................................................................... 5

9.      Due and Sufficient Notice ............................................................................ 6

Technical Modifications to The Amended Plan ....................................................... 6

10.     Technical Amendments ................................................................................ 6

Confirmation of The Amended Plan ........................................................................ 7

11.     Amended Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(l)) ...................................................................................................... 7

        (a)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)) ................. 7

        (b)     Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)) ............... 7

        (c)     Specified Treatment of Impaired Classes (11 U.S.C. §1123(a)(3)) ........... 7

        (d)     No Discrimination (11 U.S.C. § 1123(a)(4)) ................................ 8

        (e)     Implementation of Amended Plan (11 U.S.C. § 1123(a)(5)) ......... 8

        (f)     Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)) ............... 8

        (g)     Designation of Directors (11 U.S.C. § 1123(a)(7)) ....................... 8

        (h)     Additional Amended Plan Provisions (11 U.S.C. § 1123(b)) ........ 8

        (i)     Bankruptcy Rule 3016(a) .............................................................. 9

i

12.  Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)) .............. 9

13.  Amended Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)) ....................... 9

14.  Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)) ............. 9

15.  Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).................................. 10

16.  No Rate Changes (11 U.S.C. § 1129(a)(6)) ....................................................... 11

17.  Best Interests of Creditors (11 U.S.C. § 1129(a)(7)) ......................................... 11

18.  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).................................. 11

19.  Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9))............ 12

20.  Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(l0)) ............................... 12

21.  Feasibility (11 U.S.C. § 1129(a)(11)) ................................................................ 12

22.  Payment of Fees (11 U.S.C. § 1129(a)(12)) ...................................................... 12

23.  Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))............................. 12

24.  Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)) .............. 13

25.  Principal Purpose of the Amended Plan (11 U.S.C. § 1129(d)) ......................... 13

26.  Good Faith Solicitation (11 U.S.C. § 1125(e)) .................................................. 13

27.  Assumption and Assignment or Rejection of Executory Contracts..................... 14

28.  Satisfaction of Confirmation Requirements........................................................ 15

29.  Retention of Jurisdiction .................................................................................... 15

DECREES ...................................................................................................................... 15

30.  Confirmation ...................................................................................................... 15

31.  Amended Plan Classification Controlling .......................................................... 15

32.  Binding Effect..................................................................................................... 15

33.  Vesting of Assets (11 U.S.C. § 1141(b), (c)) ..................................................... 16

34.  Assumption and Assignment or Rejection of Executory Contracts and
     Unexpired Leases (11 U.S.C. §1123(b)(2)) ....................................................... 17

35.  Employee Benefit Plans ..................................................................................... 18

36.  Bar Date for Rejection Damage Claims.............................................................. 18

37.  General Authorizations ....................................................................................... 19

38.  Corporate Action................................................................................................. 19

39.  Issuance of New Securities ................................................................................. 20

**TABLE OF CONTENTS**
**(continued)**

Page

| | | |
|---|---|---|
| 40. | Incurrence of Indebtedness | 20 |
| 41. | Securities Laws Exemption | 20 |
| 42. | Exit Financing Facility | 21 |
| 43. | Plan Supplement | 22 |
| 44. | Governmental Approvals Not Required | 23 |
| 45. | Exemption from Certain Taxes | 23 |
| 46. | Distributions Under the Plan | 23 |
| 47. | Execution of Documents by Non-Debtors | 24 |
| 48. | Contribution/Merger/Dissolution of Corporate Entities and/or Related Business Assets | 24 |
| 49. | Shareholders Agreement | 25 |
| 50. | Enforcement of Subordination | 25 |
| 51. | Discharge | 25 |
| 52. | Exculpation, Injunction, and Limited Releases | 26 |
| 53. | Termination of Injunctions and Automatic Stay | 26 |
| 54. | Reinstatement of Certain Lease Guaranty Claims | 27 |
| 55. | Securities Litigation Claims | 27 |
| 56. | Surrender of Existing Securities | 27 |
| | Compensation and Reimbursement | 28 |
| 57. | Final Fee Applications | 28 |
| 58. | Final Fee Hearing | 29 |
| 59. | Objections to Final Fee Applications | 29 |
| | Miscellaneous | 29 |
| 60. | Nonoccurrence of Effective Date | 29 |
| 61. | Waiver of 10-Day Stay Under Bankruptcy Rule 3020(e) | 30 |
| 62. | Notice of Entry of Confirmation Order and Effective Date | 30 |
| 63. | Binding Effect | 31 |
| 64. | Severability | 31 |
| 65. | Conflicts Between Order and Amended Plan | 31 |
| 66. | Efficacy of Plan | 31 |

**Exhibit "A"**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------X
```

| | | |
|---|---|---|
| In re | : | |
| | | **Chapter 11** |
| **VERO ELECTRONICS INC. and** | : | **Case No. 02-12334 (PCB)** |
| **APW LTD.,** | | |
| | : | **(Jointly Administered)** |
| **Debtors.** | | |
| | : | |

```
-------------------------------------------------------X
```

## AMENDED AND RESTATED JOINT PLAN OF
## REORGANIZATION OF VERO ELECTRONICS INC. AND APW LTD.
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED

Vero Electronics Inc. and APW Ltd., as debtors, propose the following chapter 11 plan of reorganization pursuant to section 1121(a) of title 11, United States Code:

## I. Introduction

**A.    Plan Defined Terms.**  Unless the context otherwise requires, the terms specified below have the following meanings (such meanings to be applicable equally to both the singular and plural):

1.    *Agent Banks* means the Administrative Agents under the Multicurrency Credit Facility and the U.K. Credit Facility.

2.    *Allowed Administrative Expense, Allowed Claim, or Allowed Equity Interest* means an administrative expense, claim, or equity interest, as the case may be, that is allowed or deemed allowed pursuant to the Plan or sections 502, 503, or 1111 of the Bankruptcy Code.

3.    *APW* means APW Ltd., a Bermuda company.

4.    *APW Common Shares* means the authorized common shares that will be issued by Reorganized APW.

5.    *APW Distribution Pool* shall have the meaning set forth in Section III.N.5 of the Plan.

6.    *AWP* means AWP Ltd., a newly formed Bermuda company, which shall be deemed a successor of APW.  On or as promptly as possible subsequent to the Effective Date, Old APW shall change its name, and AWP will change its name to "APW Ltd."

7.  *AWP Transactions* means the transfer of all of the assets of APW to AWP, as successor-in-interest, including the right to the use of the name "APW Ltd.," and the assumption of all obligations of APW by AWP, which are to be incurred or assumed (and not otherwise discharged) pursuant to the terms of the Plan.  This transaction will only occur subject to the approval of the JPLs and the approval of the Bermuda Court, if required.

8.  *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Cases.

9.  *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Reorganization Cases, including the Local Rules of the Court.

10. *Bermuda Court* means the Supreme Court of Bermuda.

11. *Bermuda Proceeding* means the proceeding that was commenced on May 30, 2002, pursuant to the Companies Act 1981, with respect to APW in the Bermuda Court in connection with a winding-up petition.

12. *Business Day* means any day on which commercial banks are open for business, and not authorized to close, in the City of New York.

13. *Class 5 Initial Distribution Date* means eighty (80) days after the Effective Date or as soon thereafter as is practicable, taking into account any estimations of class 5 claims falling within class 5 that may be required in order to calculate distributions.

14. *Commencement Date* means the date on which the Debtors commence the Reorganization Cases.

15. *Committee* means any committee appointed in the Reorganization Cases pursuant to section 1102 of the Bankruptcy Code.

16. *Confirmation Hearing* means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code; as such hearing may be adjourned or continued from time to time.

17. *Confirmation Order* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

18. *Court* means (a) the United States District Court for the Southern District of New York having jurisdiction over the Reorganization Cases, (b) to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court pursuant to section 151 of title 28 of the United States Code, and (c) any other court having jurisdiction over the Reorganization Cases.

19. *Debtors* means APW and Vero.

20. *Debtors in Possession* means the Debtors in their capacity as debtors in possession in the Reorganization Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

21. *DIP Facility* means any working capital facilities that the Debtors, as Debtors in Possession enter into during the Reorganization cases, as approved by the Court, and any amendments, modifications or supplements thereof.

22. *DIP Facility Warrants* means any warrants to purchase up to 303,030 APW Common Shares, representing up to 20% of the APW Common Shares, on a fully diluted basis, having an exercise period of three (3) years, and an exercise price equal to $0.02 per share, that are issued pursuant to the terms of the DIP Facility. Pursuant to the DIP Facility, an additional commitment fee of $60,606 is owed by APW, which will be deemed a prepayment of the exercise price in respect of the DIP Facility Warrants. As a result of the deemed prepayment discussed above, no additional cash payment will be required from the holders thereof in connection with the exercise of the DIP Facility Warrants.

23. *Disputed Administrative Expense, Disputed Claim, or Disputed Equity Interest* means any administrative expense, claim, or equity interest (a) to the extent neither allowed nor disallowed pursuant to the Plan or a Final Order nor deemed allowed pursuant to the Plan or sections 502, 503, or 1111 of the Bankruptcy Code or (b) for which a proof of claim or interest or (in the case of an administrative expense) a motion for payment has been filed with the Court, to the extent that any party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

24. *Distribution Pool* means the APW Distribution Pool or the Vero Distribution Pool, as applicable.

25. *Effective Date* means the first Business Day on which each condition specified in Section IV.B of the Plan shall have been satisfied or waived.

26. *Existing Lender Warrants* means the warrants to purchase Old APW Common Shares issued to the Senior Lenders prior to the Commencement Date.

27. *Final Order* means an order of the Court that is in effect and is not stayed, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Court shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for

certiorari or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule or applicable state court rule of civil procedure, may be filed with respect to such order shall not prevent such order from being a Final Order.

28. *General Unsecured Claim* means any claim other than a Senior Credit Facilities Secured Claim, Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, other Intercompany Claim, or Securities Litigation Claim. General Unsecured Claims include Senior Credit Facilities Deficiency Claims.

29. *Intercompany Claim* means any claim against either of the Debtors held by an affiliate of such Debtor.

30. *Intercreditor Agreement* means the agreement by and among the holders of the New Secured Notes (or their agent) and the lenders party to the New Working Capital Facility pursuant to which the liens and claims relating to the New Secured Notes will be subordinated in priority to the liens and claims under the New Working Capital Facility in the assets of APW and its direct and indirect subsidiaries. The Intercreditor Agreement will be filed as part of a Plan Supplement.

31. *Joint Provisional Liquidators* means Malcolm L. Butterfield of KPMG, Bermuda and Philip W. Wallace of KPMG, London, England who were appointed on May 30, 2002 by the Bermuda Court in connection with the Bermuda Proceeding, and any successors thereto.

32. *Lease Guaranty Claim* means any claim arising from the guaranty by APW of a lease of any one of its affiliates other than a guaranty relating to a lease that is set forth on Exhibit C to the Plan.

33. *Majority Lenders* means holders of a majority in amount of Class 2 claims.

34. *Multicurrency Credit Facility* means (a) that certain Amended and Restated Multicurrency Credit Agreement, dated as of May 15, 2001, as amended, among APW, as borrower, Bank of America, National Association, as Administrative Agent, Bank One, NA, as Syndication Agent, JP Morgan Chase Bank, as Documentation Agent, and the financial institutions party thereto, guaranteed by Vero among others, and (b) all notes, guaranties, pledges, and other agreements and documents given or issued pursuant thereto or in connection therewith.

35. *New Memorandum of Association* means the Memorandum of Association of AWP (and after the Effective Date, Reorganized APW), substantially in the form of which will be filed as part of a Plan Supplement.

36. *New Bye-Laws* means the Bye-Laws of AWP (and after the effective date, Reorganized APW), substantially in the form of which will be filed as part of a Plan Supplement.

37. *New Management Option Plan* means a plan for the issuance to certain of the key employees of the Reorganized APW and its direct and indirect subsidiaries, to be adopted by the Board of Directors of the Reorganized APW, and certain of its affiliates, as determined by such Board, generally having the benchmarks and targets and, subject to the other terms and conditions set forth in a Plan Supplement, of options to purchase or the opportunity for such key employees to purchase 151,515 APW Common Shares or 10% of the APW Common Shares, on a fully diluted basis.

38. *New Secured Loan Agreement* means the agreement to be entered into by Reorganized APW, the lenders and other financial institutions and parties thereto and the financial institution acting as agent, and guaranteed by certain of Reorganized APW's affiliates, effective as of the Effective Date, providing for the issuance by Reorganized APW of the New Secured Notes, containing terms and conditions generally consistent with those set forth in Exhibit A to the Plan and as may be more fully set forth in a Plan Supplement, and all ancillary agreements, documents, and instruments to be issued or given in connection therewith. The New Secured Loan Agreement will be an amendment and restatement or a replacement of the Senior Credit Facilities.

39. *New Secured Notes* means the $100,000,000 principal amount of secured notes to be issued on the Effective Date by Reorganized APW pursuant to the New Secured Loan Agreement and guaranteed by certain of Reorganized APW's affiliates, on the terms and conditions generally consistent with those set forth in Exhibit A to the Plan and as may be more fully set forth in a Plan Supplement. The New Secured Notes will be in exchange for the Senior Credit Facilities Secured Claim.

40. *New Warrants* means warrants to be distributed to holders of allowed equity interests of APW pursuant to Section II.D.8.a of the Plan, to purchase up to 60,606 APW Common Shares, representing 4% of the APW Common Shares, on a fully diluted equity basis, having an exercise period of seven (7) years, and an exercise price equal to the amount obtained by dividing (a) the aggregate amount of Senior Credit Facilities Secured Claims and the Senior Credit Facilities Deficiency Claims less $100 million by (b) the total outstanding APW Common Shares (assuming exercise of all DIP Facility Warrants), issued pursuant to a warrant agreement to be filed as part of a Plan Supplement and having the terms and conditions set forth therein.

41. *New Working Capital Facility* means the revolving credit facility to be obtained by Reorganized APW on the Effective Date, having principal terms and conditions no less favorable to Reorganized APW than those set forth in Exhibit B to the Plan, and all ancillary agreements, documents, and instruments to be issued or given in connection therewith or, if the Debtors are unable to obtain such revolving credit facility, the Exit Facility (as defined in the DIP Facility).

42. *Old APW* means APW, on or after the Effective Date, after giving effect to the AWP Transactions.  On or as promptly as possible subsequent to the Effective Date, Old APW shall change its name.

43. *Old APW Common Shares* means the existing common shares of APW (and, after the Effective Date, Old APW) and does not include the APW Common Shares.

44. *Other Secured Claim* means any Allowed Claim, any claim that is disallowed only pursuant to sections 502(b)(5) or 502(e) of the Bankruptcy Code, or that is not an allowed secured claim only because of the failure of the entity to file a proof of claim for such claim, in each case, which claim is secured by a lien (that is not subject to avoidance or otherwise invalid) on property of a Debtor's estate to the extent it is a secured claim as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such claim is subject to permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff; provided that to the extent the amount of such an Allowed Claim exceeds the value of the property securing such claim or the permissible setoff, such amount shall be a General Unsecured Claim; provided further that a Secured Credit Facilities Secured Claim is not an Other Secured Claim.

45. *Plan* means this chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the terms and conditions hereof.

46. *Plan Supplements* means the form of documents specified in Section V.C of the Plan.

47. *Priority Tax Claim* means any unsecured claim held by a governmental unit entitled to a priority in right of payment under section 507(a)(8) of the Bankruptcy Code, whether or not such claim is listed on the Schedules or evidenced by a filed proof of claim.

48. *Priority Non-Tax Claim* means any claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, whether or not such claim is listed on the Schedules or evidenced by a filed proof of claim.

49. *Pro Rata Share* means (i) with respect to any claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a class is the same as the ratio such claim bears to the total amount of all Allowed Claims (plus Disputed Claims until disallowed) in such class, and (ii) with respect to any equity interest, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Equity Interest in a class of equity interests to the amount of such Allowed Equity Interest is the same as the ratio of the consideration distributed on account of all Allowed Equity Interests in such class and reserved for distribution on account of all Disputed Equity Interests in such class to the amount of all allowed and Disputed Equity Interests in such class.

50. *Record Date* means the day that is five Business Days after the date the Court enters the Confirmation Order.

51. *Reorganization Cases* means the chapter 11 cases of the Debtors.

52. *Reorganized APW* means AWP, on and after the Effective Date.

53. *Reorganized Debtor* means either of Vero, Reorganized APW, or any successor to either of the Debtors, on and after the Effective Date.

54. *Reorganized Vero* means Vero, on and after the Effective Date.

55. *Schedules* means the schedules of assets and liabilities, statements of financial affairs, and lists of holders of claims and equity interests filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any amendments and supplements thereto.

56. *Securities Litigation Claim* means any claim against either of the Debtors, under applicable federal or state law, whether or not such claim is listed on the Schedules or evidenced by a filed proof of claim, whether or not the subject of an existing lawsuit, arising from or seeking the rescission of a purchase or sale of a security of the Debtors or any affiliate of the Debtors, for damages arising from the purchase or sale of such a security, or for reimbursement, indemnification or contribution allowed under section 502 of the Bankruptcy Code on account of such a claim.

57. *Senior Credit Facilities* means the Multicurrency Credit Facility and the U.K. Credit Facility.

58. *Senior Credit Facilities Deficiency Claim* means any claim arising under the Senior Credit Facilities to the extent that such claim is not a secured claim as determined in accordance with section 506(a) of the Bankruptcy Code. For purposes of this Plan, the Senior Credit Facilities Deficiency Claims are hereby allowed as General Unsecured Claims in the aggregate amount of $460 million (or such other amount as may be determined by the Bankruptcy Court).

59. *Senior Credit Facilities Secured Claim* means any claim arising under the Senior Credit Facilities to the extent such claim is a secured claim as determined in accordance with section 506(a) of the Bankruptcy Code. For purposes of this Plan, the Senior Credit Facilities Secured Claims are hereby allowed as secured claims in the aggregate amount of not less than $225 million (or such other amount as may be determined by the Bankruptcy Court).

60. *Senior Lender* means any of the parties to any of the Senior Credit Facilities (other than the Debtors and their affiliates), including Bank of America, as administrative agent.

61. *Shareholders Agreement* means an agreement by and among certain of holders of the APW Common Shares issued pursuant to the Plan, and the DIP Facility Warrants (but not the New Management Option Plan), containing the terms and conditions set forth in Exhibit E to the Plan, a form of which will be filed as part of a Plan Supplement.

62. *Subsequent Distribution Date* means the Business Day after the end of a fiscal quarter after the fiscal quarter in which the Effective Date occurs and the tenth Business Day after the end of each subsequent fiscal quarter.

63. *Tax Rate* means (i) as to the Internal Revenue Service, the interest rate equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. § 6621(c)) as of the Effective Date, and (ii) as to all other taxing authorities, a fixed annual interest rate of eight percent (8%).

64. *U.K. Credit Facility* means, collectively (a) that certain Agreement dated October 24, 1995, as amended, by and among APW Electronics Group PLC (formerly Vero Group PLC), certain affiliates thereof, and The Royal Bank of Scotland, (b) that certain Multi-Line Facility Agreement dated April 20, 2000, as amended, by and among APW Enclosure Products and Systems Limited, certain affiliates thereof, and National Westminster Bank PLC, (c) Deed Constituting Floating Rate Unsecured Loan Notes 2008, dated June 19, 1998, as amended, by Applied Power Limited and National Westminster Bank PLC, (d) Deed Constituting Floating Rate Unsecured Loan Notes 2003, dated October 13, 1998, as amended, by APW Enclosure Systems Limited and National Westminster Bank PLC, and (e) Counter-Indemnity Agreement, dated on or about April 25, 2001, by and among APW and National Westminster Bank PLC, as amended by that certain Payment Agreement dated June 28, 2002, between, among others, APW and National Westminster Bank, PLC, and (f) all notes, guaranties, pledges, and other agreements and documents given or issued pursuant thereto or in connection therewith.

65. *Vero* means Vero Electronics Inc., a New York corporation.

66. *Vero Common Stock* means the shares of common stock authorized to be issued by Vero.

67. *Vero Distribution Pool* shall have the meaning set forth in Section III.N.5 of the Plan.

**B.    Bankruptcy Code Terms.**  "Allowed," "case," "claims," "confirm," "confirmation," "debtor," "governmental unit," "impaired," and other capitalized or uncapitalized terms defined (either explicitly or implicitly) in the Bankruptcy Code are used herein with such defined meanings.

**C.    Other Terms.**  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**D.** All Exhibits to the Plan and the Plan Supplements are incorporated into and are a part of the Plan as if set forth in full.

## II. Classification and Treatment of Claims and Equity Interests

**A.** **Summary.** The categories of claims and interests listed below classify allowed claims and allowed equity interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan. Except as otherwise provided in the Plan or the order of the Court confirming the Plan, or required by subsection 506(b) or section 1124 of the Bankruptcy Code, (i) allowed claims do not include interest on such claims after the Commencement Date and (ii) any postpetition interest that is payable in respect of a Priority Tax Claim shall be calculated at the applicable Tax Rate. The chart set forth below is only intended as a summary description of the treatment of the described claims and interests. Sections II.B-D of the Plan control to the extent of any inconsistency between the provisions thereof and said summary.

|  | **Class** | **Treatment** |
|---|---|---|
| Unclassified | Administrative Expenses | Paid in full. |
| Unclassified | Priority Tax Claims | At the Reorganized Debtors' option, paid in full (a) on the later to occur of the Effective Date or on such date as a Priority Tax Claim is allowed, or (b) over a period not to exceed six years from the date of assessment, in equal annual payments, plus interest. Priority Tax Claims that are not due and payable, under applicable non-bankruptcy law, as of the Effective Date, shall survive confirmation. |
| Class 1 | Priority Non-Tax Claims | *Unimpaired.* Paid in full. |
| Class 2 | Senior Credit Facilities Secured Claims | *Impaired.* Distribution of (a) the New Secured Notes and (b) 1,000,000 APW Shares representing 100% of the APW Shares outstanding as of the Effective Date. |

| | | |
|---|---|---|
| Class 3 | Other Secured Claims | *Unimpaired*. At the option of the Debtors, either (a) reinstated and rendered unimpaired, including, without limitation, retaining any permissible rights of setoff, (b) receive cash in an amount equal to such other secured claim, including any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (c) receive the collateral securing such claim and any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code. |
| Class 4 | Lease Guaranty Claims | *Unimpaired*. Reinstated. |
| Class 5 | General Unsecured Claims: | |
| | Subclass 5A: General Unsecured Claims Against APW | Subclass 5A: *Impaired*. Distribution of Pro Rata Share of $300,000 but in no event to exceed 70% of the allowed claims. The holders of the Senior Credit Facilities Deficiency Claims (subclass 5A) will not share in the distribution to other subclass 5A claims if such percentage is not exceeded. Any amounts in excess of such percentage shall be shared pro rata with the Senior Credit Facilities Deficiency Claims as part of subclass 5A General Unsecured Claims. |
| | Subclass 5B: General Unsecured Claims Against Vero | Subclass 5B: *Impaired*. Distribution of Pro Rata Share of $200,000 but in no event to exceed 70% of the allowed claims. The holders of the Senior Credit facilities Deficiency Claims (subclass 5B) will not share in the distribution to other subclass 5B claims if such percentage is not exceeded. Any amounts in excess of such percentage shall be shared pro rata with the Senior Credit Facilities Deficiency Claims as part of subclass 5B General Unsecured Claims. |

| | | |
|---|---|---|
| Class 6 | Intercompany Claims<br><br>Subclass 6A: Intercompany Claims Against APW<br><br>Subclass 6B: Intercompany Claims Against Vero | *Unimpaired.* Retain all legal, equitable and contractual rights with respect to such claims. |
| Class 7 | Securities Litigation Claims | *Impaired/ Deemed to Reject.* Proceeds, if any, of the Debtors' directors' and officers' liability policy, subject to the terms and conditions of such policy. |
| Class 8 | Equity Interests<br><br>Subclass 8A: Equity Interests in APW (other than Subclass 8C)<br><br><br><br><br><br><br><br>Subclass 8B: Equity Interests in Vero<br><br>Subclass 8C: Options and Warrants to purchase Equity Interests in APW (including the Existing Lender Warrants) | Subclass 8A: *Impaired/Deemed to Reject.* (a) New Warrants (representing the right to purchase 60,606 APW Common Shares) and (b) to retain existing common shares in Old APW. Subsequent to the Effective Date, Old APW shall be dissolved, liquidated or wound-up by the JPLs in connection with the Bermuda Proceeding or otherwise pursuant to applicable Bermuda law.<br><br>Subclass 8B: *Unimpaired.* Retain equity interests.<br><br>Subclass 8C: *Impaired/Deemed to Reject.* No distribution. |

**B.    Administrative Expenses.**  Each allowed administrative expense shall be paid in full, in cash, on the later of the Effective Date and the date on which such administrative expense is allowed, or as soon thereafter as practicable, except to the

extent that the applicable Reorganized Debtor and the holder of such allowed administrative expense agree to a different treatment; *provided, however*, that allowed administrative expenses representing obligations incurred in the ordinary course of business by the Debtors in Possession, consistent with past practice, or assumed by the Debtors in Possession shall be paid in full or performed by the Reorganized Debtors in the ordinary course of business, including liabilities arising under loans or advances to, or other obligations incurred by, the Debtors in Possession which shall be paid in full and performed by the Reorganized Debtors in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, other documents or applicable non-bankruptcy law relating to such transactions or liabilities.

**C.    Priority Tax Claims.**  Each Priority Tax Claim which is Allowed on or before the Effective Date shall be paid, at the sole option of the applicable Reorganized Debtor, (a) in full, in cash, on the Effective Date (or, in the case of Priority Tax Claims referenced in the next sentence, which are Allowed after the Effective Date, on the date on which such Priority Tax Claim is Allowed), or as soon thereafter as practicable, or (b) in equal annual cash payments in an aggregate amount equal to such allowed Priority Tax Claim, together with interest at the Tax Rate, over a period through the sixth anniversary of the date of assessment of such allowed Priority Tax Claim, in each case except to the extent that Reorganized APW and the holder of such allowed claim agree to a different treatment.  All Priority Tax Claims shall (i) survive confirmation of the Plan, (ii) remain unaffected thereby (whether or not a proof of claim is filed or whether or not a claim is listed on the Schedules) and (iii) not be discharged, provided, however, that to the extent that such claims pertain to periods prior to the commencement of the Reorganized Cases, such claims may be satisfied in the manner described in the previous sentence if and when Allowed.  Holders of Priority Tax Claims will not be required to file proofs of claim.

**D.    Classification, Treatment, and Voting.**  The allowed claims against and equity interests in the Debtors shall be classified and receive the treatment specified below.  Each holder of an allowed claim or allowed equity interest in an impaired class of claims or equity interests shall be entitled to vote separately to accept or reject the Plan as provided in such order as is entered by the Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any order or orders of the Court.

1. Class 1:    Priority Non-Tax Claims.

    a.    *Classification*.  Class 1 consists of allowed claims entitled to priority pursuant to subsection 507(a) of the Bankruptcy Code, other than allowed administrative expenses and allowed Priority Tax Claims.

    b.    *Treatment*.  On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as is practicable, each allowed claim in class 1 shall be paid in full, in cash, except to the extent

that the applicable Reorganized Debtor and the holder of such allowed claim agree to a different treatment.  All Priority Non-Tax Claims which are disputed, but not challenged or contested in the Bankruptcy Court, shall be afforded the foregoing treatment, whether or not such claims are listed on the Schedules or evidenced by a filed proof of claim.  The allowance of Priority Non-Tax Claims that are not so listed or filed shall be determined in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceeding as same may be approved by order of a court of competent jurisdiction.  Holders of Priority Non-Tax Claims will not be required to file proofs of claim.

c.      *Voting*.  Class 1 is not impaired.  Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in Class 1 are conclusively presumed to have accepted the Plan.

2.  Class 2:    Senior Credit Facility Secured Claims.

a.      *Classification*.  Class 2 consists of all allowed claims arising under the Senior Credit Facilities to the extent such claim is a secured claim as determined in accordance with section 506(a) of the Bankruptcy Code, including without limitation, the secured and guaranty claims of the administrative agent, the other agents, and the lenders thereunder.

b.      *Treatment*.  On the Effective Date or as soon thereafter as practicable, APW shall distribute to the Agent Banks, on behalf of the agents and lenders under the Senior Credit Facilities, the (i) New Secured Notes, and (ii) 1,000,000 APW Common Shares (representing 100% of APW Common Shares outstanding as of the Effective Date).

c.      *Voting*.  Class 2 is impaired and the holders of allowed claims in Class 2 are entitled to vote to accept or reject the Plan.

3.  Class 3:    Other Secured Claims.

a.      *Classification*.  Class 3 consists of all allowed secured claims other than claims in Class 2 (Senior Credit Facilities Secured Claims).

b.      *Treatment*.  On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, each allowed claim in Class 3, at the sole option of the applicable Reorganized Debtor, (i) be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, including any permissible right of setoff, (ii) be paid cash in an amount equal to such other secured claim, including any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iii) be paid the collateral securing such claim and any interest required to be paid pursuant to section 506(b) of the Bankruptcy Code, except to the extent that the

Reorganized Debtor and the holder of such allowed claim agree to a different treatment.

      c.     *Voting*. Class 3 is not impaired. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in Class 3 are conclusively presumed to have accepted the Plan.

      d.     *Setoff Rights*. To the extent that a creditor is a holder of an allowed Class 3 claim as a result of any permissible setoff rights that it may have in respect of a contingent or unliquidated claims then at such time as the claim became non-contingent, liquidated and allowed either (i) pursuant to a Final Order of the Court, or an equivalent Final Order of a court of competent jurisdiction or (ii) by agreement with the applicable Debtor or Reorganized Debtor, it shall provide an accounting to the applicable Reorganized Debtor of the amount of such claim and shall promptly pay to said Reorganized Debtor the balance, if any, of the amount owed by it to said Reorganized Debtor that was not applied by it to satisfy its allowed Class 3 claim.

4. Class 4:    Lease Guaranty Claims.

      a.     *Classification*. Class 4 consists of all allowed Lease Guaranty Claims.

      b.     *Treatment*. On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, each allowed claim in Class 4 shall be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, except to the extent that the APW or Reorganized APW, as the case may be, and the holder agree to a different treatment.

      c.     *Voting*. Class 4 is not impaired. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in Class 4 are conclusively presumed to have accepted the Plan.

5. Class 5:    General Unsecured Claims.

      a.     Subclass 5A – APW General Unsecured Claims

      i.     *Classification*. Subclass 5A consists of all allowed unsecured claims against APW not otherwise classified in the Plan, including, without limitation, the Secured Credit Facilities Deficiency Claims.

      ii.     *Treatment*. On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, except to the extent that a holder of such claim agrees to accept a lesser amount, each holder of an allowed claim in subclass 5A, shall be paid cash in an amount to

its Pro Rata Share of $300,000, but in no event to exceed 70% of the allowed claims. Notwithstanding anything contained herein to the contrary, however, no holder for allowed claims in subclass 5A shall be paid more in the aggregate, than 70% of the amount of its allowed claim. The holders of the Senior Credit Facilities Deficiency Claims will not share in the distribution to other subclass 5A claims (and therefore will not be included as a subclass 5A claim for the purpose of making such distribution) if such percentage is not exceeded. Any amounts, in the aggregate, which exceed such percentage, shall be shared pro rata with holders of the Senior Credit Facilities Deficiency Claim as part of the subclass 5A General Unsecured Claim.

       iii.    *Voting*. Subclass 5A is impaired and the holders of allowed claims in classes are entitled to vote to accept or reject the Plan.

    b.    Subclass 5B – Vero General Unsecured Claims

       i.    *Classification*. Subclass 5B consists of all allowed unsecured claims against Vero not otherwise classified in the Plan, including, without limitation, the Secured Credit Facilities deficiency claims.

       ii.    *Treatment*. On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, except to the extent that a holder of such claim agrees to accept a lesser amount, each holder of an allowed claim in subclass 5B, shall be paid cash in an amount to its Pro Rata Share of $200,000, but in no event to exceed 70% of the allowed claims Notwithstanding anything contained herein to the contrary, however, no holder for allowed claims in subclass 5B shall be paid more in the aggregate, than 70% of the amount of its allowed claim. The holders of the Senior Credit Facilities Deficiency Claims will not share in the distribution to other subclass 5B claims (and therefore will not be included as a subclass 5B claim for the purpose of making such distribution) if such percentage is not exceeded. Any amounts, in the aggregate, which exceed such percentage, shall be shared pro rata with the holders of Senior Credit Facilities Deficiency Claims as part of the subclass 5B General Unsecured Claim.

       iii.    *Voting*. Subclass 5B is impaired and the holders of allowed claims in classes are entitled to vote to accept or reject the Plan.

6. Class 6:    Intercompany Claims.

    a.    *Classification*. Class 6 consists of all allowed claims against the Debtors held by any affiliates of the Debtors.

    b.    *Treatment*. On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, each allowed claim in Class 6 shall be reinstated and rendered unimpaired in

accordance with section 1124 of the Bankruptcy Code, except to the extent that the applicable Debtors or Reorganized Debtors, as the case may be, and the holder agree to a different treatment.

c. *Voting*. Class 6 is not impaired. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in class 6 are conclusively presumed to have accepted the Plan.

7. Class 7 – Securities Litigation Claims

a. *Classification*. Class 7 consists of all securities litigation claims.

b. *Treatment*. In accordance with section 510(b) of the Bankruptcy Code, Class 7 claims shall be subordinated to all other claims. On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, each holder of an allowed claim in class 7 shall receive such proceeds, if any, that may be under the Debtors' directors' and officers' liability policy (which will be assumed and assigned as provided in the Plan), subject to the terms and conditions of such policy. Notwithstanding section 1141 of the Bankruptcy Code, the discharge of the Securities Litigation Claims shall not operate as an injunction against the prosecution of such claims against Old or Reorganized APW to a final judgment for the limited purpose of enabling the holder of an allowed Class 7 claim to recover any such judgment solely from such proceeds, if any. In all other respects, the Debtors, the Reorganized Debtors, Old APW and their respective properties are released and discharged from any and all liabilities and obligations, if any, to holders of Securities Litigation Claims. Nothing in the Plan, and the Reorganized Debtors' and Old APW's release and discharge (a) will, or will be deemed to, satisfy or release or discharge such claims against any non-Debtor or non-Reorganized Debtor defendants or (b) enjoin the prosecution of such claims against non-Debtor or non-Reorganized Debtor defendants in accordance with applicable non-bankruptcy law. Any Securities Litigation Claims, whether or not listed on the Schedules or evidenced by a filed proof of claim, shall be determined and liquidated in the administrative or judicial tribunal(s) in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceeding as same may be approved by order of a court of competent jurisdiction.

c. *Voting*. Subclass 7 is impaired and the holders of allowed claims in classes are deemed to reject the Plan and not entitled to vote.

8. Class 8: Equity Interests.

a. Subclass 8A – APW Equity Interests

i. *Classification*. Subclass 8A consists of the allowed equity interests evidenced by all the issued and outstanding common shares in APW, as of the Commencement Date, other than options and warrants to purchase common shares of APW classified as subclass 8C.

ii. *Treatment*. Holders of subclass 8A equity interests, as of the Record Date, shall in exchange for their existing equity interests, receive their Pro Rata Share of the New Warrants (representing the right to purchase 60,606 APW Common Shares). In addition, holders of subclass 8A equity interests shall retain their existing equity interests in Old APW, which will be dissolved, liquidated or wound-up by the JPLs in connection with the Bermuda Proceeding, or otherwise pursuant to applicable Bermuda law.

iii. *Voting*. Subclass 8A is impaired and the holders of allowed claims in classes are deemed to reject the Plan and are not entitled to vote.

b. Subclass 8B – Vero Equity Interests

i. *Classification*. Subclass 8B consists of the allowed equity interests evidenced by all the issued and outstanding Vero Common Stock.

ii. *Treatment*. The holder of subclass 8B equity interests shall retain such interest.

iii. *Voting.* Subclass 8B is not impaired. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in subclass 8B are conclusively presumed to have accepted the Plan.

c. Subclass 8C – Options and Warrants To Purchase Equity Interests in APW

i. *Classification*. Subclass 8C consists of the allowed options and warrants to purchase common shares in APW (including the Existing Lender Warrants).

ii. *Treatment*. The holder of subclass 8C equity interests shall not receive any distribution.

iii. *Voting*. Subclass 8C is impaired and the holders of allowed claims are deemed to reject the Plan and are not entitled to vote.

**E.** **Nonconsensual Confirmation**. The Debtors request that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code.

## III. Implementation of the Plan

**A.  Contribution/Merger/Dissolution of Corporate Entities and/or Related Business Assets**.  On the Effective Date, subject to the requirements of applicable Bermuda law in respect of APW and the Reorganized APW, the following contributions, mergers and dissolutions may be effective and effectuated without any further action by the stockholders or directors of any of the Debtors, Reorganized Debtors or Old APW:

1.  Any affiliate (or affiliate's business assets) of the Debtors may be contributed, merged or amalgamated into or with APW, Vero, Reorganized APW, Reorganized Vero, or any of their respective affiliates; and

2.  Vero or Reorganized Vero may be dissolved.

**B.  Issuance of Equity Securities.**  Subject to the requirements of applicable Bermuda law, as of the Effective Date, Reorganized APW shall (i) issue (a) 1,000,000 APW Common Shares representing 100% of the outstanding APW Common Shares as of the Effective Date, (b) the DIP Facility Warrants and (c) the New Warrants and (ii) be authorized to grant the options and share issuances under the New Management Option Plan pursuant to the Plan and reserve APW Common Shares underlying such options. On the Effective Date, or as soon thereafter as is practicable, Reorganized APW shall execute and deliver all documents and agreements that are necessary or appropriate to cause the issuance of such securities.

**C.  AWP Transactions.**  Subject to the requirements of applicable Bermuda law and such other laws as may be applicable and the approval of the JPLs and, if required, of the Bermuda Court, as of the Effective Date, APW will transfer to AWP all of APW's assets as a successor-in-interest, including the right to the use of the name "APW Ltd.," and shall assume or incur all of the liabilities of APW, after giving effect to this amended Plan, not otherwise discharged pursuant thereto, including the indebtedness to be incurred or assumed under the New Secured Loan Agreement and the New Working Capital Facility.  It is contemplated that concurrently with the consummation of the amended Plan, Old APW will change its name, and AWP will change its name to "APW Ltd."

**D.  Dissolution/Liquidation/Winding-up of Old APW.**  Subsequent to the Effective Date, Old APW will be dissolved, liquidated or wound-up by the JPLs in connection with the Bermuda Proceeding or otherwise pursuant to applicable Bermuda law.  Holders of subclass 8A equity interests will retain their existing equity interests in Old APW.  It is not contemplated that such dissolution, liquidation or winding-up will result in any additional distributions to such holders on account of such equity interests.

**E.  Incurrence of New Indebtedness**.  Subject to the requirements of applicable Bermuda law as to APW and Reorganized APW, on the Effective Date, the Debtors and the Reorganized Debtors are authorized to incur or assume indebtedness

under the New Secured Loan Agreement and New Working Capital Facility and to execute and deliver all documents, agreements, and instruments acceptable to it, and deliver all collateral, necessary or appropriate to effectuate the same.

**F.     Modification of Existing Agreements.**  On the Effective Date, except for purposes of distributions under the Plan, the Senior Credit Facilities shall not be released or discharged but modified or amended consistent with the provisions of the Plan so that a portion of the Senior Credit Facilities shall be exchanged for the New Secured Notes issued under the New Secured Loan Agreement.  On the Effective Date, all liens, security interests, and pledges securing the obligations of the Debtors and their affiliates incurred pursuant to or in connection with the Senior Credit Facilities shall not be released or discharged but will be modified or amended consistent with the provisions of the Plan.

**G.     Surrender of Existing Securities.**  Except with respect to distributions to holders of the claims in Class 2 and the equity interests in subclass 8A, and unless waived by the Reorganized Debtors, as a condition to receiving any distribution under the Plan, each holder of a promissory note, certificate, or other instrument evidencing a claim must surrender such promissory note, certificate, or other instrument.  Any holder of a claim that fails to (i) surrender such instrument and collateral or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the applicable Reorganized Debtor before the later to occur of (a) the second anniversary of the Effective Date and (b) six months following the date such holder's claim is allowed, shall be deemed to have forfeited all rights and claims with respect thereto, may not participate in any distribution under the Plan on account thereof, and all amounts owing with respect to such allowed claim shall be retained by the applicable Reorganized Debtor.

**H.     Enforcement of Subordination.**  The Plan takes into account the relative priority of the claims or equity interests in each class in connection with any Bankruptcy Code subordination provisions relating thereto.  Accordingly, the confirmation of the Plan shall permanently enjoin, effective as of the Effective Date, all enforcement or attempts to enforce any further rights with respect to the distributions under the Plan other than enforcement by holders to receive such distribution in accordance with the Plan.

**I.     Corporate Action.**

1.  *Boards of Directors*.  On the Effective Date or soon thereafter as practicable, consistent with the laws of Bermuda and Barbados, the initial Board of Directors for Reorganized APW shall consist of the 7 individuals (including the chief executive officer and one nominee of the chief executive officer so long as such nominee satisfies the requirements of local corporate law as to the citizenship or residency of at least one director).  The names of the initial members of the Board of Directors as of the Effective Date, or those who will be nominated to become members as of the Effective Date, or as promptly as possible thereafter, shall be disclosed on or before the Confirmation Hearing. Reorganized APW, upon the Effective Date shall appoint or cause the appointment of such directors.  Those officers who are selected to be officers of Reorganized APW, who

are not currently officers of APW, shall be elected by the Board of Directors as of the Effective Date. Those directors and officers not continuing in office shall resign therefrom as of the Effective Date. The initial Board of Directors for Reorganized APW shall select the officers and directors of Reorganized Vero.

2. *Governing Documents.* AWP has filed the New Memorandum of Association with the applicable Bermuda governmental authority and such Memorandum of Association and the New Bye-Laws shall be the governing documents of Reorganized APW on the Effective Date. The certificate of incorporation for Reorganized Vero, as well as the New Bye-Laws, shall contain provisions necessary (a) to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such certificate of incorporation, New Bye-Laws and other governing documents, as permitted under applicable law and (b) to effectuate the provisions of the Plan.

**J.     Issuance of Plan Securities.**  Subject to the requirements of the applicable Bermuda law as to APW and Reorganized APW, on the Effective Date, the Debtors and the Reorganized Debtors are authorized (i) to issue the New Secured Notes and to execute and deliver all necessary documents, agreements, and instruments acceptable to them and deliver all collateral necessary or appropriate to effectuate the same and (ii) to issue the APW Common Shares, the DIP Facility Warrants, and the New Warrants, and to execute and deliver all necessary documents, agreements, and instruments acceptable to them and necessary or appropriate to effectuate the same.

**K.     Shareholders Agreement.**  As part of the Plan, the holders of APW Common Shares issued pursuant to the Plan, as set forth in Exhibit E to the Plan, and the DIP Facility Warrants will, by acceptance of such shares or warrants, be bound by the terms of the Shareholders Agreement to the maximum extent permitted by applicable law, including the Bankruptcy Code.

**L.     Section 1145 Exemption.**  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable nonbankruptcy laws, the APW Common Shares, the New Secured Notes and the New Warrants issued pursuant to the Plan are exempt from registration under the Securities Act of 1933, as amended.

**M.     Section 1146 Exemption.**  Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of an instrument of transfer under the Plan may not be taxed under any domestic law imposing a stamp or similar tax.

**N.     Method of Distribution Under the Plan.**

1. *Distributions by Reorganized APW.*  Except as otherwise provided in the Plan, the DIP Facility in respect of the DIP Facility Warrants, or the Confirmation Order, distributions under the Plan shall be made by Reorganized APW or its designee to the holders of (i) allowed claims (a) at the addresses set forth on the Schedules unless

superseded by proofs of claims or transfers of claims pursuant to Bankruptcy Rule 3001 or (b) at the last known addresses of such holders if the Debtors have been notified in writing of a change of address, and (ii) allowed equity interests, to the address maintained with the registrar or transfer agent for such equity interests.

2. *Certain Distributions by Agent Banks*. All distributions under the Plan to holders of Senior Credit Facilities Secured Claims (Class 2) and Senior Credit Facilities Deficiency Claims (Class 5) shall be made by Reorganized APW to the Agent Banks, which in turn, shall make the distributions to holders of such claims at the addresses last known to the Agent Banks. Such distributions to the Agent Banks shall be in complete satisfaction and discharge of the Debtors' obligations to the holders of Senior Credit Facilities Secured Claims and claims under the Senior Credit Facilities.

3. *Distributions as of the Record Date*. As of the close of business on the Record Date, the claims register and equity register, as applicable, shall be closed and there shall not be any further changes in the record holder of any claim without the consent of the Reorganized Debtors. The Reorganized Debtors may, but in no event shall be obligated to, recognize the transfer of any claim occurring after the Record Date. The Reorganized Debtors shall be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register as of the close of business of the Record Date.

4. *Distributions With Respect to Disputed Claims and Equity Interests*. No distributions shall be made with respect to Disputed Administrative Expenses, Disputed Claims, or Disputed Equity Interests. To the extent that a Disputed Administrative Expense, Claim, or Equity Interest is allowed after the Effective Date, the holder thereof shall receive the distribution to which the Plan entitles such holder in respect of such allowed administrative expense or claim, without interest. Except as otherwise ordered by the Court or provided in the Plan, each distribution to be made on a specific date shall be deemed to have been made on such date if actually made on the later of such date and the date on which such administrative expense, claim, or equity interest is allowed, or as soon thereafter as practicable.

5. *Distributions With Respect to Holders of Class 5 Claims*:

    a. *Distributions as to Class 5 Claims*. The holder of a Class 5 claim that is or becomes an allowed General Unsecured Claim, no later than ten (10) days prior to the Class 5 Initial Distribution Date shall receive a distribution in respect of such allowed General Unsecured Claim from the applicable Distribution Pool on the Class 5 Initial Distribution Date.

    b. *Distributions Withheld for Disputed Class 5 Claims*. On the Class 5 Initial Distribution Date and each Subsequent Distribution Date, the Reorganized Debtors shall reserve from the distributions to be made on such dates from the applicable Distribution Pool to the holders of allowed General Unsecured Claims, an amount equal to 100% of the cash distributions to which

holders of disputed General Unsecured Claims would be entitled under the Plan (including the portion of the cash distribution that relates to Disputed Claims), as of such dates as if such Disputed General Unsecured Claims were allowed claims in their Disputed Claim amounts.

c.     *Property Held in Distribution Pool*.  The cash that relates to Disputed Class 5 claim*s* shall be deposited into the applicable Distribution Pool on or before the dates that payments thereof are to be made to holders of Disputed Class 5 claim*s*.  Amounts held in the applicable Distribution Pool shall then be distributed to holders of Disputed General Unsecured Claim*s* pursuant to this Section III.N.5.c as Disputed General Unsecured Claim*s* are resolved.  All amounts held in the Distribution Pool shall be held in a segregated, non-interest bearing account in the name of the applicable Reorganized Debtor.

d.     *Expenses of Distribution Pools*.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable expenses incurred by the Reorganized Debtors, as applicable, on or after the Effective Date with respect to the Distribution Pools, shall be paid by the Reorganized Debtors and shall not reduce the funds held in the Distribution Pools.

e.     *Distributions Upon Allowance of Disputed Class 5 Claims.*  The holder of a Disputed Class 5 claim, that becomes an allowed claim subsequent to the Class 5 Initial Distribution Date shall receive from the applicable Distribution Pool, the distribution of cash that would have been made to such holder under Section II.D.5 of the Plan if the Disputed Class 5 claim had been an allowed claim on or prior to the Class 5 Initial Distribution Date, without any post-Initial Distribution Date interest on such claims, on the Subsequent Distribution Date that follows the fiscal quarter during which such Disputed Class 5 claim becomes an allowed claim.

6.     *Setoffs and Recoupments.*  The Debtors may, but shall not be required to, set off against or recoup form any claim on which payments are to be made pursuant to the Plan, any claims or any nature whatsoever the Debtors or the Reorganized Debtors may have against the claimant, but neither the failure to do so nor the allowance of any claim shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such claim the Debtors or Reorganized Debtors may have against such claimant.

7.     *Distributions of Unclaimed Property*.  Any distribution of property (cash or otherwise) under the Plan which is unclaimed after the later to occur of (a) two years following the Effective Date and (b) six months after the date on which such claimant's claim is allowed, shall be transferred to Reorganized APW, notwithstanding state escheat or other similar domestic laws to the contrary.  In the event that any securities are returned to the Reorganized Debtors as unclaimed property, such securities shall be canceled.

8.  *Saturday, Sunday, or Legal Holiday.*  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

9.  *Fractional Shares and New Warrants.*  No fractional APW Common Shares or New Warrants shall be distributed.  For purposes of distribution, (i) fractional New Common Shares will be rounded down to the next whole number or zero, as applicable and no cash in lieu thereof will be distributed and (ii) fractional New Warrants will be rounded down to the next whole number or zero, as applicable, and each holder who would have been entitled (absent such rounding) to fractional New Warrants, shall be entitled to a cash payment in lieu of such fractional warrant of $4.20 per whole New Warrant.

10. *De Minimis Distribution.*  No cash payment of less than $5.00 shall be made to any holder on account of an allowed claim unless a request therefor is made in writing to Reorganized APW.

**O.**     **Vesting of Assets.**  On the Effective Date, the assets of the Debtors and their estates shall vest in the Reorganized Debtors free and clear of all claims, security interests, liens, and interests of holders of claims and equity interests, except as provided in the Plan.  As of the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Plan.

**P.**     **Executory Contracts and Unexpired Leases.**

1.  *Generally.*  As of the Effective Date, all executory contracts and unexpired leases that exist between any of the Debtors and any other party are hereby specifically rejected (including those executory contracts and unexpired leases listed on Exhibit C to the Plan), except for (a) any executory contracts or unexpired leases which are the subject of a motion to assume or reject which is pending on the date the Plan is confirmed, which shall be assumed or rejected in accordance with the disposition of such motions and (b) the executory contracts and unexpired leases listed on Exhibit D to the Plan, which, to the extent not previously assumed, assumed and assigned, or rejected pursuant to Court order, are specifically assumed pursuant to the Plan.  Entry of the Confirmation Order by the Clerk of the Court shall constitute (y) approval, pursuant to subsection 365(a) of the Bankruptcy Code, of such assumptions and rejections pursuant to the Plan and (z) the determination that, with respect to such assumptions pursuant to the plan, "*adequate assurance of future performance*" (within the meaning of section 365 of the Bankruptcy Code) by the Reorganized Debtors thereunder has been demonstrated and no further adequate assurance is required.  The Debtors reserve the right to modify and amend the lists of executory contracts to be assumed or rejected as set forth on Exhibits C and D, either by a motion or an amendment to the Exhibits which will be contained in a Plan Supplement.  As to those executory contracts and unexpired leases not assumed or

rejected pursuant to the Plan, their assumption or rejection shall be subject to the consent of the Majority Lenders, whose consent shall not be reasonably withheld. The listing of a document on either Exhibits C or D shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder. In connection with the AWP Transactions and pursuant to this amended Plan, the Confirmation Order or other orders of the Bankruptcy Court, all contracts assumed by APW hereunder, or under any other order of the Bankruptcy Court, shall be assigned to AWP.

2. *Cure of Defaults*. Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, pursuant to subsection 365(b) of the Bankruptcy Code by payment of the default amount in cash on the Effective Date or on such other terms as the parties to such assumed executory contract or unexpired lease may agree. In the event of a dispute regarding the amount of any cure payments, the ability of any assignee to provide "*adequate assurance of future performance*" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed and assigned, or any other matter pertaining to assumption or assignment, the cure payments required by subsection 365(b) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption and/or assignment.

3. *Insurance Policies*. All of the Debtors' insurance policies and any agreements, documents or instruments relating thereto are treated as executory contracts under the Plan.

4. *Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan*. Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section III.P of the Plan must be filed with the Bankruptcy Court and served upon the Debtors or, on and after the Effective Date, the Reorganized Debtors, no later than 30 days after the later of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease and (ii) notice of entry of the Confirmation Order. Any Claims not filed within such time will be forever barred from assertion against the Debtors, their estates, the Reorganized Debtors and their property.

**Q.** **Retiree Benefits.** After the Effective Date, the payment of retiree benefits (as defined in section 1114 of the Bankruptcy Code), if any, at the level established pursuant to section 1114 of the Bankruptcy Code, shall continue for the duration of the period the Debtors have obligated themselves to provide such benefits.

**R.** **Employee Benefit Plans.** Except as otherwise set forth in the Plan (including as set forth in Exhibit C, as may be amended) or ordered by the Court, all employee benefit plans, policies, and programs of the Debtors and the Debtors' obligations thereunder (including all severance arrangements and change of control agreements), shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged. Employee benefit plans, policies, and programs include, without

limitation, all medical and health insurance, life insurance, dental insurance, disability benefits and coverage, leave of absence, retirement plans, retention plans, severance plans, contributions to nondiscretionary individual retirement accounts, and other such benefits (to the extent not executory contracts assumed under the Plan or specifically rejected).

**S.      Officers and Directors.**  All directors' and officers' liability insurance policies maintained by the Debtors are treated as executory contracts and assumed.  Entry of the Confirmation Order by the Clerk of the Court shall constitute approval of such assumptions pursuant to subsection 365(a) of the Bankruptcy Code.  The obligation of the Debtors to indemnify, reimburse or limit the liability of their present and former directors, officers or employees who were directors, officers or employees, respectively, against any claims or obligations pursuant to the Debtors' certificates of incorporation, by-laws, applicable corporate law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged only to the extent such obligations (i) relate to an event or conduct occurring after the date the Reorganization Cases were commenced, or (ii) are for prepayment, reimbursement or indemnification with respect to payments made by or for the benefit of such directors or officers in respect of events or conduct that occurred prior to the date of the commencement of the Reorganized Cases, up to a maximum aggregate amount, inclusive of prepayments, reimbursement and indemnification payments made prior to the commencement of the Reorganized Cases, of $250,000.

**T.      Exculpation.**  The Debtors, the Reorganized Debtors, Old APW and the Senior Lenders, and each of their respective principals, members, partners, limited partners, officers, directors, shareholders, employees, agents, representatives, and professionals shall neither have nor incur any liability to any person for any act taken or omitted to be taken (whether prior to or after the date of this Plan) in connection with, related to, or in contemplation of, the formulation, preparation, structuring, dissemination, implementation, administration, confirmation, or consummation of the Plan, the disclosure statement for the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any act taken or omitted to be taken in connection with the restructuring of the Debtors or during the Reorganization Cases, including the AWP Transactions.

**U.      Injunction.**  Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all persons and entities shall be permanently enjoined from commencing or continuing in any manner, any suit, action, or other proceeding, on account, or in respect, of any claim, obligation, debt, right, action, cause of action, remedy, or liability satisfied pursuant to the Plan, and the Confirmation Order shall so provide (including without limitation, any suit, action, or other proceeding challenging in any other manner (including seeking to enjoin or obtain affirmative relief that is inconsistent with) the post-Effective Date transactions required or contemplated to take place pursuant to the provisions of this Plan, including, without limitation, pursuant to paragraph III.C hereof).

**V.     Limited Releases by Debtors**.  Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the obligations and undertakings of the Senior Lenders set forth in the Plan, the agreement of the Senior Lenders to their treatment as holders of subclass 5A and subclass 5B claims, facilitating both the Debtors obtaining the DIP Facility by, *inter alia*, consenting to the subordination of their liens on the assets of the Debtors and their affiliates and the liens granted under such facility and the implementation of the restructuring contemplated by the Plan, the Senior Lenders, on and after the Effective Date, are released by the Debtors, the Reorganized Debtors and Old APW from any and all Claims (as defined in section 101(5) of the Bankruptcy Code), obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, forseen or unforseen, existing or hereafter arising, in law, equity or otherwise, that the Debtor or any of its subsidiaries would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any such Claim or equity interest or other person or entity, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, arising under, or relating to, the Senior Lenders' obligations under the DIP Facility and the New Working Capital Facility.

## IV.  Effectiveness of the Plan

**A.     Conditions Precedent to Confirmation.**  The Plan shall not be confirmed unless and until the following conditions have been satisfied in full or waived by the Debtors:

1.   The Confirmation Order shall be in form and substance reasonably satisfactory to the Debtors and the Majority Lenders; and

2.   A commitment letter or agreement for the New Working Capital Facility shall be in full force and effect and shall not have expired or otherwise terminated.

**B.     Conditions Precedent to Effective Date.**  The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions have been satisfied in full or waived by the Debtors:

1.   The Confirmation Order has been entered and no stay or injunction is in effect;

2.   The New Secured Loan Agreement, the New Working Capital Facility, the documents that relate to the DIP Facility Warrants, the New Memorandum of Association, the New Bye-Laws, the Shareholders Agreement and New Warrants, each in form and substance reasonably satisfactory to the Debtors and the Majority Lenders, which shall be consistent with the provisions hereof and shall have been executed by all necessary parties thereto and prior to, or simultaneously with, the effectiveness of the Plan, shall have become effective;

3.    The Intercreditor Agreements shall have been executed by all necessary parties thereto and prior to, or simultaneously with, the effectiveness of the Plan, shall have become effective;

4.    The JPLs and the Bermuda Court, if required, shall have approved the AWP Transactions; and

5.    The AWP Transactions shall have been consummated.

6.    The receipt by the Debtors of all consents and approvals required by any governmental or regulatory authorities.

**C.    Waiver of Conditions.**  The Debtors, with the consent of holders of at least 66 2/3 % in amount of the total of the Senior Credit Facilities Deficiency Claims and the Senior Credit Secured Claims (which consent shall not be reasonably withheld), may waive, by a writing signed by an authorized representative of each of the Debtors and subsequently filed with the Bankruptcy Court, one or more conditions precedent to confirmation of the Plan or the occurrence of the Effective Date set forth in Section IV.A or IV.B, respectively, of the Plan.  Upon the waiver of any conditions to the Effective Date set forth in Section IV.B of the Plan, and subject to the satisfaction in full of each of the remaining conditions set forth in such section, the Plan shall become effective in accordance with its terms without notice to third parties or any other formal action.

**D.    Effect of Failure of Conditions.**  If each of the conditions to effectiveness and the occurrence of the Effective Date has not been satisfied or waived as provided in Section IV.C on for before the first Business Day that is more than 60 days after the date on which the Court enters a Confirmation Order, or by such later date as is proposed by APW and approved, after notice and an opportunity for a hearing, by the Court, then upon motion by the Debtors made before the time that each of the conditions has been satisfied or waived, the Confirmation Order may be vacated by the Court; *provided, however*, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to consummation is either satisfied or waived by the Debtors before the Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this section, the Plan shall be null and void in all respects and nothing contained in the Plan shall (a) constitute a waiver or release of any claims against or equity interests in any of the Debtors or (b) prejudice in any manner the rights of the holder of any claim or equity interest in any of the Debtors.

## V.   Administrative Provisions

**A.    Discharge.**

1.    *Scope*.  Except as otherwise expressly specified in the Plan, entry of the Confirmation Order acts as a discharge of all debts of, claims against, and liens on, the Debtors, their assets, and their properties, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of claim therefor was filed, whether

the claim is allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution thereunder. Upon the entry of the Confirmation Order, any holder of such discharged claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, Old APW, or any of their respective assets or properties, any other or further claim or equity interest based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the date the Court enters the Confirmation Order.

2.   *Injunction.*  Except as otherwise expressly specified in the Plan, in accordance with section 524 of the Bankruptcy Code, the discharge provided by this section and section 1141 of the Bankruptcy Code, *inter alia*, acts as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset, or recover the claims discharged hereby.

**B.    Administrative Expense, Claim, and Equity Interest Objections.**
Unless otherwise ordered by the Court, all objections to, and requests for estimation of, Administrative Expenses, Claims, and Equity Interests shall be filed and served on the applicable claimant on or before the date that is sixty (60) days after the Effective Date or sixty (60) days after such Administrative Expense, Claim, or Equity Interest is filed, whichever is later.  On and after the Effective Date, except to the extent that the Reorganized Debtors consent, only the Reorganized Debtors shall have the authority, without necessity for Court approval, to file, settle, compromise, withdraw, or litigate to judgment objections to, and requests for estimation of, Administrative Expenses, Claims, and Equity Interests.

**C.    Plan Supplements.**  Forms of the New Memorandum of Association, the New Bye-Laws, the DIP Facility Warrants, the New Management Option Plan, the New Secured Loan Agreement, the New Secured Notes, the Shareholders Agreement, the New Warrants (and related agreements), and any listings of (i) additional executory contracts, if any, not set forth on the exhibits to the Plan that are to be assumed rejected and (ii) any executory Contract that use to be reclassified from that set forth in said exhibits as assumed or rejected, in each case shall be contained in one or more Plan Supplements filed with the Clerk of the Court five (5) days prior to the day of the hearing held by the Court to consider confirmation of the Plan, pursuant to section 1129 of the Bankruptcy Code, or such days to which such hearings may be adjourned or continued from time to time.  Such documents shall be consistent with the terms hereof and be in form and substance reasonably satisfactory to the applicable Debtor and the Majority Lenders.

**D.    Preservation of Causes of Action.**  All rights and causes of action held by the Debtors against any other party shall remain assets of the Reorganized Debtors and may be pursued.

**E.    Expenses Incurred After the Effective Date.**  Expenses incurred by the Reorganized Debtors and Old APW on and after the Effective Date, including without limitation, claims for professional fees and expenses, shall not be subject to application

and may be paid by the Reorganized Debtors and Old APW in the ordinary course of business and without further Court approval.

**F.** **Retention of Jurisdiction.** The Court shall have exclusive jurisdiction of all matters arising out of and related to the Reorganization Cases and the Plan pursuant to, and for the purposes of, subsection 105(a) and section 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

1. To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases, pending on the date the Plan is confirmed, and the allowance of claims resulting therefrom;

2. To determine any other applications, adversary proceedings, and contested matters pending on the Effective Date;

3. To ensure that distributions to holders of allowed claims and allowed equity interests are accomplished as provided herein;

4. To resolve disputes as to the ownership of any claim or equity interest;

5. To hear and determine timely objections to administrative expenses, claims, and equity interests;

6. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

7. To issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

8. To consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

9. To resolve disputes concerning exculpations and injunctions contained in the Plan;

10. To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

11. To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and related documents;

12. To hear and determine any issue for which the Plan or any related document requires a Final Order;

13. To hear and determine matters concerning state, local, and federal taxes, if any, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14. To hear and determine any matters arising under or related to section 1145 of the Bankruptcy Code;

15. To hear any other matter not inconsistent with the Bankruptcy Code; and

16. To enter a final decree closing the Reorganization Cases.

**G.**     **Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date or as soon as practicable thereafter.

**H.**     **Dissolution of Statutory Committees.**  All statutory committees appointed in the Reorganization Cases pursuant to section 1102 of the Bankruptcy Code, if any, shall be dissolved on the Effective Date.

**I.**     **Modification of Plan.**  The Plan may be modified by the Debtors in accordance with section 1127 of the Bankruptcy Code.

**J.**     **Severability.**  If prior to the date of entry of the Confirmation Order, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provisions to make it valid or enforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination, and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K.**     **Headings.**  Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**L.**     **Binding Effect.**  Upon entry of the Confirmation Order, the provisions of the Plan shall be binding upon the Debtors and their successors and assigns and any and all creditors and equity interest holders of the Debtors and their respective successors and assigns, whether or not the claim or interest of any such creditor or equity interest holder is impaired or unimpaired under the Plan and whether or not any such creditor or equity interest holder (a) voted for or against the Plan, (b) objected or did not object to confirmation of the Plan, or (c) otherwise participated or did not participate in the Reorganization Cases.

**M. Notices.** Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

To the Debtors or Reorganized Debtors:

APW LTD.
2 Church Street
Hamilton HM CX,
Bermuda
-and-
N22 W23685 Ridgeview Parkway West
Waukesha, WI 53188-1013
Attn: Chief Financial Officer

with a copy to:

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Attn: Richard P. Krasnow, Esq.

**N. Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the Companies Act 1981 of Bermuda, and other applicable Bermuda law, in respect of APW and Reorganized APW, the laws of the State of New York shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan.

**O. Filing or Execution of Additional Documents.** On or before the Effective Date, and without the need for any further order or authority, the Debtors or Reorganized Debtors shall file with the Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to them as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**P. Withholding and Reporting Requirements.** In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**Q. Good Faith.** The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. The Debtors and each of their

respective affiliates, agents, representatives, members, principals, shareholders, directors, officers, employees, advisors, and attorneys have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under the Plan, and therefore, are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be liable at any time for the violation of any applicable law, rule, or regulating governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

Dated: Waukesha, Wisconsin
      July 23, 2002

Respectfully submitted,

VERO ELECTRONICS, INC.

By: /S/ Susan M. Hrobar
    Susan M. Hrobar
    Its: President


APW LTD.

By: /S/ Richard G. Sim
    Richard G. Sim
    Its: President and Chief
       Executive Officer

TERM SHEET
FOR NEW SECURED NOTES AND
NEW SECURED LOAN AGREEMENT

1. <u>Amount</u>:

$100 Million.  An amount of this debt will be equal to the difference between the amount drawn under the U.S. multi-currency facility as of the filing date and $530 million (*i.e.*, a maximum of $40 million) (the "Intercreditor Priority Amount") and thus, will be comprised of the increase (as of the filing date) in the U.S. multi-currency facility since May, 2001, and the remaining portion of this debt, in an amount that is equal to the difference between the $100 million amount of the New Secured Term Notes and the Intercreditor Priority Amount, shall be a reinstatement of that amount of the remaining senior debt determined based on a pro rata allocation of the debt remaining under the U.S. facility and the U.K. facility.

2. <u>Interest Rate</u>:

LIBOR <u>plus</u> 3.5% per annum or the Base Rate <u>plus</u> 1.5% per annum, payable quarterly in cash except as described in the succeeding sentence.  APW, Ltd.  shall have the option to defer the payment of interest for up to two quarters upon the following terms and conditions: (a) the two quarters shall not be consecutive, (b) the non-default interest during the period of any deferral shall be the non-default interest rate then in effect plus 2% (with the non-default rate reverting back to the prior rate for the next and subsequent interest periods), (c) upon the first exercise of such deferral right, the non-default interest rate shall permanently increase by twenty-five basis points (this would be only a single increase; it would **not** increase by an additional twenty-five basis points if APW, Ltd. availed itself of the second deferral option), (d) the option is not available if there is an existing Event of Default unrelated to this interest deferral feature, (e) this option expires upon the earlier to occur of (i) the end of APW, Ltd.'s fiscal year 2004 and (ii) the first six month period during which APW, Ltd.'s overall leverage ratio is 3.5 times or less, and (f) any interest deferred pursuant to the exercise of this option shall be capitalized and thus, due and payable at maturity.

3. <u>Maturity</u>:

Fifth year anniversary of the effective date of the plan of reorganization (the "Maturity Date").

4. <u>Amortization</u>:

| | |
|---|---|
| Year 1 | 0 |
| Year 2 | 0 |

|          |                   |
|----------|-------------------|
| Year 3   | 2.5% per quarter  |
| Year 4   | 5% per quarter    |
| Year 5   | 5% per quarter    |

5.     <u>Excess Cash Sweep</u>:     Annual cash flow sweep commencing immediately, with the Excess Cash Flow (to be defined), to be applied to reduce the balloon payment due at maturity of the New Secured Term Notes.

6.     <u>Prepayment</u>:     Prepayable at par (including accrued and unpaid interest), at any time without penalty.

7.     <u>Collateral</u>:     The New Secured Term Notes will be secured by the following collateral (subject, in each case, to the prior rights of the lenders (as defined below) under the New Working Capital Facility with respect to such collateral):

(i) all existing collateral which presently secures the obligations owing to the senior secured lenders; and

(ii) all property which was unencumbered on the filing date or is acquired during the case (other than assets in which it is not legally or practically possible to obtain perfected security interests, mortgages or other liens).

8.     <u>Guarantors</u>:     New Secured Term Notes shall remain absolutely and unconditionally guaranteed by the APW's direct and indirect subsidiaries (the "Guarantees"), and such guarantees shall be secured by substantially all of the assets of such guarantors (other than assets in which it is not legally or practically possible to obtain perfected security interests, mortgages or other liens).

9.     <u>Priority of Liens</u>:     The security interests, mortgages and other liens in the assets of APW, Ltd. and its direct and indirect subsidiaries securing the New Secured Term Notes and the Guarantees thereof shall be junior in priority only to (i) to the $110 million of New Working Capital Facility described below and (ii) such other liens (e.g., a capitalized lease "basket") to which the agent and the lenders (by requisite percentages) agree, both in terms of type and amount. The relative priority between the liens securing the New Secured Term Notes, on the one hand, and the New Working Capital Facility, on the other hand, shall be implemented pursuant to the provisions of an intercreditor agreement.

10.  <u>Other Terms</u>:     All representations, covenants (including financial covenants), conditions, events of default, indemnifications, assignment provisions and other terms and provisions of the term loan agreement under which the New Secured Term Notes to be issued shall be in the form and substance acceptable to the agents and the lenders (by requisite percentages).  Voting and agent exculpation and indemnity provisions shall be substantially identical to those found in present credit agreements.

11.  <u>Administrative Agent</u>:     Bank of America, N.A.

12.  <u>Collateral Agents</u>:     Bank of America, N.A. and Royal Bank of Scotland

1. <u>Amount</u>:    $110 Million revolving credit, asset-based facility to be provided by a group of lenders (the "New Working Capital Facility Lenders"). A portion of the facility may be used to reduce the amount of any borrowings under the DIP Facility as of the Effective Date.

2. <u>Guarantors</u>:    The New Working Capital Facility shall be absolutely and unconditionally guaranteed by all of APW's U.S. and non-U.S. direct and indirect Subsidiaries (the "Guarantors"), and such guarantees (the "Guarantees") shall be secured by substantially all of the assets of the Guarantors.

3. <u>Interest Rate</u>:    Interest on amounts borrowed under the New Working Capital Facility shall be payable either at (i) LIBOR plus 3.5% per annum or (ii) the base rate plus 1.5% per annum, payable quarterly in arrears.

4. <u>Facility Fee</u>:    $825,000, or 0.75% of the total commitment.

5. <u>Commitment Fee</u>:    0.50% per annum on the unused portion of the New Working Capital Facility (with letters of credit issued under the facility to be treated as amounts borrowed under the facility).

6. <u>Maturity Date</u>:    First anniversary of the Consummation Date, but in no event earlier than November 30, 2003.

7. <u>Collateral</u>:    All obligations with respect to the New Working Capital Facility (including all principal, interest and fees payable) will be secured by the following collateral:

   (i)  all existing collateral which presently secures the Senior Credit Facilities; and

   (ii) all property which was unencumbered on the date of the chapter 11 filing or is acquired during the Reorganization Cases.

8. <u>Priority of Liens</u>:    The security interests, mortgages and other liens on the assets of APW and the Guarantors securing the New Working Capital Facility and the Guarantees thereof shall be junior in priority only to such other liens to which the Administrative Agent and the New Working Capital Facility Lenders (by requisite percentage) agree, both in terms of type and amount. The

security interests, mortgages and other liens securing the New Working Capital Facility shall in all respects be senior in priority to the security interests, mortgages and other liens securing the New Secured Notes. The relative priority between the liens securing the New Working Capital Facility, on the one hand, and the New Secured Notes, on the other hand, shall be set forth in an intercreditor agreement.

9. Other Terms:

All representations, covenants (including financial covenants), conditions, events of default provisions, indemnification provisions, assignment provisions and other terms and provisions of the New Working Capital Facility shall be in a form acceptable to the agent for the New Working Facility Capital Facility Lenders and the New Working Capital Lenders (by requisite percentage).

10. Relationship to DIP Financing:

The New Working Capital Facility may be used to refinance the DIP Facility in its entirety upon the Effective Date.

As part of its DIP Facility, APW has the option to enter into discussions with the DIP Lenders to refinance and amend the terms of the DIP Facility upon the earlier to occur of 180 days from the date of APW's filing of the chapter 11 proceeding or the date of confirmation of the Plan (the "Exit Facility"). In the event that APW is unable to enter into an Exit Facility to refinance the entire DIP Facility, the commitment amounts under each of Tranches A, B and C shall automatically be recast to be equal to the lesser of (a) the amount of such commitments as of the effective date of the Plan and (b) the amount of any repayment of each loan, if any, from any refinancing facility as of that date, and the termination date for Tranche A and B loans automatically shall be extended for one year and the termination date for the Tranche C loan automatically shall be extended for two years.

**EXHIBIT "C"**

**VERO EXECUTORY CONTRACTS AND
UNEXPIRED LEASES TO BE REJECTED**

By order, dated May 16, 2002 (the "Rejection Order"), the court approved

the Debtors' motion pursuant to section 365(a) of the Bankruptcy Code and Federal Rule

of Bankruptcy Procedure 6006 approving the rejection of a lease and sublease relating to

the property located at Tract 4, Barnes Industrial Park, Sterling Drive, Wallingford, CT

06514.

Although the aforesaid lease and sublease had been included in Exhibit

"C" to be rejected pursuant to the Amended Plan, given their rejection pursuant to the

Rejection Order, they are hereby removed from Exhibit "C."

**EXHIBIT "C"**

**APW LTD. EXECUTORY CONTRACTS AND
UNEXPIRED LEASES TO BE REJECTED**

**(This Exhibit is subject to the modifications set forth in the Plan Supplement)**

| NAME AND MAILING ADDRESS INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE |
|---|---|
| APW Outside Directors' Stock Incentive Plan<br>N22 W23685 Ridgeview Parkway West<br>Waukesha, WI 53188-1013 | Plan for the granting of non-qualified stock options to the outside directors of APW Ltd. |
| APW Ltd. 2000 Stock Plan<br>N22 W23685 Ridgeview Parkway West<br>Waukesha, WI 53188-1013 | Plan to grant stock options to key employees of APW Ltd. |
| APW Ltd. 2001 Stock Plan<br>N22 W23685 Ridgeview Parkway West<br>Waukesha, WI 53188-1013 | Plan to grant stock options to key employees of APW Ltd. |
| Ralph Sandle, Jr.<br>7212 Sawbuck Ct.<br>Raleigh NC 27613 | Change in Control Agreement to provide contractual assurances in the event of the possibility, threat or occurrence of a change in control of APW Ltd, dated 11/1/00. |
| Bank of America, N.A.<br>Steve A. Saratore<br>Global Derivative Products<br>Bank of America<br>233 South Wacker Drive<br>Chicago, IL  60606-6306 | SWAP Agreement by and between Bank of America, N.A. and APW Ltd., dated January 4, 2001. |
| Fleet National Bank<br>100 Federal Street<br>Boston, MA 02110<br>Attn: William LePard | ISDA Master SWAP Agreement by and between Fleet National Bank and APW Ltd., dated November 16,1999. |
| Actuant Corporation<br>61010 N. Baker Road<br>Milwaukee, WI 53209 | Contribution Agreement, Plan and Agreement of Reorganization and Distribution by and between Applied Power Inc. and APW Ltd., dated July 21, 2000 for the distribution of certain assets and the assumption of certain liabilities by APW Ltd. |
| Actuant Corporation<br>61010 N. Baker Road<br>Milwaukee, WI 53209 | General Assignment, Assumption and Agreement Regarding Litigation, Claims and Other Liabilities by and between Applied Power Inc. and APW Ltd., dated July 21, 2000. |

| NAME AND MAILING ADDRESS INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE |
| --- | --- |
| Actuant Corporation<br>61010 N. Baker Road<br>Milwaukee, WI 53209 | Transitional Trademark and License Agreement by and between Applied Power Inc. and APW Ltd., dated July 21, 2000. |
| Actuant Corporation<br>61010 N. Baker Road<br>Milwaukee, WI 53209 | Bill of Sale and Assumption of Liabilities by and between Applied Power Inc. and APW Ltd., dated July 21, 2000. |
| Actuant Corporation<br>61010 N. Baker Road<br>Milwaukee, WI 53209 | Employee Benefits and Compensation Agreement by and between Applied Power Inc. and APW Ltd., dated July 21, 2000. |
| Actuant Corporation<br>61010 N. Baker Road<br>Milwaukee, WI 53209 | Tax Sharing and Indemnity Agreement by and between Applied Power Inc. and APW Ltd., dated July 21, 2000. |

**EXHIBIT "D"**

**VERO EXECUTORY CONTRACTS AND
UNEXPIRED LEASES TO BE ASSUMED**

| NAME AND MAILING ADDRESS INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE. |
|---|---|
| N/A | |

# EXHIBIT "D"

## APW LTD. EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES TO BE ASSUMED

**(This Exhibit is subject to the modifications set forth in the Plan Supplement)**

| NAME AND MAILING ADDRESS INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE |
|---|---|
| Binnema Management Services Ltd. Henry Binnema, CMA Suite 201 Lauriston Collymore Rock St. Michael Barbados, West Indies, BGI | Management contract to provide necessary services and residency requirement of Barbados domiciled company, dated 7/01/00. |
| Guo Wei Shen No. 399, Lane 822, Zhen Nan Rd Shanghai 200331 PRC | Employment Agreement for employment conditions and relocation expense coverage. |
| Carol Flack Ashley Road, Uxbridge Middlesex, UB8 2SQ England | Employment Agreement for employment conditions and relocation expense coverage, dated |
| Consignia, plc Purchasing Services Room 215 Wheatstone House Wheatstone Road Dorcan, Swindon SN3 5JN Attn: Lech Bartoszewski | Global Supply Agreement to provide or manufacture certain equipment for mail processing equipment, dated 6/21/01. |
| ERNI Elektroapparate Gmbh Postfach D-73099 Adelberg Germany Attn: Colin James and Andrea Berger | Corporate Purchase Agreement for the purchase of electronic connector products and services, dated 1/12/99. |
| Ash & Lacy Perforators Ltd. P.O. Box 58 Alma Street Smethwick West Midlands B66 2RP | Corporate Purchase Agreement for the purchase of perforated steel products, dated 1/3/00. |
| MacFarlane Group Grantham Lincolnshire NG31 9SF | Corporate Purchase Agreement for the purchase of corrugated packaging products, dated 9/1/01. 11/30/01 |

| | |
|---|---|
| Laird Technologies<br>Shielding Way<br>P.O. Box 650<br>Delaware Water Gap, PA  18327-0650<br>Attn:  Scott Lewis | Strategic Purchase Agreement for the purchase of certain gaskets/gasket products, dated 8/10/01. |
| Future Electronics Corp.<br>237 Hymus Boulevard<br>Pointe Claire, Quebec<br>Canada H9R 5C7 | Incremental Business Agreement for purchase of various electronic components, dated 6/5/01. |
| Knight Electronics Inc.<br>10557 Metric Drive<br>Dallas, TX  75243 | Master Supplier Agreement for purchase of goods, dated 10/1/01. |
| Arconix Group, Inc.<br>800 Del Norte Boulevard<br>Oxnard, CA  93030 | Inventory Management Agreement for the purchase of goods. |
| Lawson Products<br>1666 East Touhy Avenue<br>Des Plaines, IL  60018<br>Attn:  Secretary | Supply Agreement for the purchase of fasteners and related services, dated 11/5/01. |
| Applied Materials, Inc.<br>9700 U.S. Hwy 290 East<br>Austin, TX  78724 | Purchase Agreement for the sale of electronic enclosures for semi-conductor manufacturing applicators. |
| Ericsson Radio Systems AB<br>SE 16480<br>Stockholm, Sweden | General Purchase Agreement for the sale of electronic enclosures for telecommunications applications. |
| Jaco Electronics, Inc.<br>2030 Algonquin Road, Suite 406<br>Schaumburg, IL  60173 | Volume Purchase Agreement for the purchase of certain goods.<br>11/01 |
| Arrow Electronics<br>25 Hub Drive<br>Melville, NY  11747 | Volume Purchase Agreement for the purchase of certain goods.<br>12/01 |
| Digi-Key Corporation<br>701 Brooks Avenue South<br>Thief River Falls, MN  56701 | Volume Purchase Agreement for the purchase of certain goods.<br>4/01 |
| Pioneer Standard Electronics, Inc.<br>6065 Parkland Blvd.<br>Cleveland, OH  44124 | Volume Purchase Agreement for the purchase of certain goods.<br>6/01 |
| Sager Electronics<br>97 Libbey Industrial Parkway<br>Weymouth, MA  02189 | Volume Purchase Agreement for the purchase of certain goods.<br>7/01 |
| Alliance Electronics Distributor<br>1 Musick<br>Irvine, CA  92618 | Resale Consignment Agreement for the consignment of APW Ltd. materials and component parts.<br>2/26/02 |
| Fastenal Company<br>National Account Department<br>2001 Theurer Boulevard<br>Winona, MN 55987 | Supply Agreement for purchase of certain fasteners or joining devices.<br>11/1/99 – 10/31/04 |

| | |
|---|---|
| Paymentech, Inc.<br>1601 Elm Street, 10th Floor<br>Dallas, TX 75201 | Merchant Application and Agreements for the processing and settling of credit and debit card transactions. |
| American Express<br>Corporate Card Acquisitions<br>20022 N. 31st Avenue<br>Phoenix, AZ 85027 | American Express Card Acceptance Agreement for corporate card program/corporate accounts. |
| IFS North America, Inc.<br>10 N. Martingale Rd, Suite 600<br>Schaumburg, IL 60173<br>Attn: Dick Grelck, COO | Master Agreement for the license of ERP package for data processing of financial, distribution and manufacturing information. |
| Oracle Corporation<br>500 Oracle Parkway, M/S OPL-3105<br>Redwood Shores, CA 94065<br>Attn: Ara Herach Archouniani, Account Manager | Oracle License Agreement for use of proprietary databases. |
| Fleet Business Credit Corporation<br>c/o Fleet Capital Corporation<br>One Financial Plaza<br>Providence, RI 02903 | Payment Plan Agreement by and between Fleet Business Credit Corporation for the payments due under the Oracle License Agreement, along with Payment Schedule No.1 and the amendment thereto. |
| MCI WorldCom Communications Inc.<br>East Wisconsin Ave. Suite 1111<br>Milwaukee, WI 53202<br>Attn: Krista Verhein, Account Manager | MCI WorldCom Network Service Agreement for the purchase of routers and other telephone and network services. |
| Hewlett-Packard Company<br>17975 West Sarah Lane, Suite 150<br>Brookfield, WI 53045<br>Attn: Yvonne Holder, Account Manager | Computer Maintenance Agreement for the maintenance of certain computers with respect to upgrades, support and related enhancements. |
| Parametric Technology Corporation<br>140 Kendrick Street<br>Needham, MA 02494-2714<br>Attn: Greg Doyle, Account Manager | Pricing Agreement for the pricing and related costs of certain services related to the License Agreement for engineering software. |
| Parametric Technology Corporation<br>140 Kendrick Street<br>Needham, MA 02494-2714<br>Attn: Greg Doyle, Account Manager | License Agreement for engineering software. |
| EMC Corp.<br>330 E. Kilbourn, Suite 1100<br>Milwaukee, WI 53202<br>Attn: Brad Farmer, Account Manager | Agreement for the purchase of equipment to facilitate the storage of data. |
| Hewlett Packard Company<br>10955 Tantau Avenue<br>Cupertino, CA 95104 | Commercial Settlement Agreement for resolution of disputed claims alleged by Hewlett-Packard Company. |

| | |
|---|---|
| Dell Corporation<br>One Dell Way<br>Round Rock, Texas 78682<br>Attn:  Joshua Meyer, Account Representative | Agreement for the purchase of certain computers and software products. |
| United Asset Coverage, Inc.<br>S 64 24600 Susan Street<br>Waukesha, WI  53189<br>Attn:  John Menzies, Account Manager | Master Services Agreement for the maintenance and monitoring of telephone switches. |
| MSLI, GP<br>Dept. 551 – Volume Licensing<br>6100 Neil Road, Suite 210<br>Reno, NV 89511-1137<br><br>Attn:  Mike Garoukian, Regional Manager | Microsoft Business Agreement for the license and usage of certain Microsoft software. |
| Logical Managed Services<br>N19 W24400 Riverwood Dr, Ste 325<br>Waukesha, WI  53188<br>Attn:  Sharon Schraith, Account Manager | Proposal for Enterprise Monitoring and Management for maintaining computers and managing the data center. |
| Radan Corporation<br>Stirling Business Centre<br>Wellgreen Place, Stirling<br>Scotland<br>Attn:  Chris Cooper, Sales Manager | Volume Purchase Agreement for the purchase of licenses for engineering software. |
| Exodus Communications, Inc.<br>1808 Swift Drive, Suite B<br>Oak Brook, IL 60523<br>Attn:  Tom Melzl, Account Representative | Master Services Agreement for the location and storage of computers and the provision of certain office services. |
| Art Technology Group, Inc.<br>25 First Street<br>Cambridge, MA 02141 | Master Dynamo Ordering, License and Service Agreement for the licensing of computer software programs and purchase of maintenance services and related materials. |
| Eprise Corporation<br>200 Crossing Blvd.<br>Framingham, MA 01702 | Software License and Services Agreement. |
| The Hays Group<br>1200 North Mayfair Road, Ste. 250<br>Milwaukee, WI  53226<br>Attn:  Dan Kwiecinski<br><br>Travelers Property Casualty<br>One Tower Square<br>Hartford, CT  06183 | Insurance policy issued by Travelers Property Casualty(Auto US and Canada, General Liability, Workers' Compensation). |

| | |
|---|---|
| Aviation Insurance Services<br>500 Coventry Lane, Ste. 140<br>Crystal Lake, IL 60014<br>Attn: Michael Calhoun<br><br>Global Brokering Services<br>Aviation Division<br>1 Seething Lane<br>London<br>EC3N 4NH | Insurance policy issued by Aircraft Builders Council (Aviation and Aircraft Products). |
| Aviation Insurance Services<br>500 Coventry Lane, Suite 140<br>Crystal Lake, IL 60014<br>Attn: Michael Calhoun<br><br>United States Aviation<br>Underwriters Incorporated<br>1011 East Touhy Ave., Suite 425<br>Des Plaines, IL 60018 | Insurance policy issued by United States Aviation Underwriters Incorporated (Aviation). |
| The Hays Group<br>1200 North Mayfair Rd., Suite 250<br>Milwaukee, WI 53226<br>Attn: Dan Kwiecinski<br><br>The Ohio Casualty Group of<br>Insurance Companies<br>136 North Third Street<br>Hamilton, OH 45025 | Insurance policy issued by Ohio Casualty Group of Insurance Companies (Umbrella). |
| Willis Corporation of Wisconsin<br>333 East Kilbourn Street, Suite 1400<br>Milwaukee, WI 53202<br>Attn: Danita Cole-Medved<br><br>The Insurance Company of the<br>State of Pennsylvania<br>70 Pine St.<br>New York, NY 10270 | Insurance policy issued by The Insurance Company of the State of Pennsylvania (Global Liability). |
| Willis Corporation of Wisconsin<br>333 East Kilbourn Street, Suite 1400<br>Milwaukee, WI 53202<br>Attn: Danita Cole-Medved<br><br>Affiliated FM Insurance Company<br>P.O. Box 7500<br>Johnston, RI 02919 | Insurance policy issued by FM Global (Ocean Cargo/Marine, Property Global). |

| | |
|---|---|
| Willis Corporation of Wisconsin<br>333 East Kilbourn Street, Ste. 1400<br>Milwaukee, WI 53202<br>Attn: Danita Cole-Medved<br><br>National Flood Services<br>Flood Insurance Processing Center<br>P.O. Box 2057<br>Kalispell, MI 59003-2057 | Insurance policy issued by National Flood Insurance (Flood). |
| Willis Corporation of Wisconsin<br>333 East Kilbourn Street, Ste. 1400<br>Milwaukee, WI 53202<br>Attn: Jeane Flanagan<br><br>Executive Protection Department<br>Chubb Group of Insurance Companies<br>15 Mountain View Road<br>Warren, NJ 07059 | Insurance policy Issued by Chubb Group of Insurance Companies (Executive Risk). |
| Willis Corporation of Wisconsin<br>333 East Kilbourn Street, Ste. 1400<br>Milwaukee, WI 53202<br>Attn: Danita Cole-Medved<br><br>The Insurance Company of the<br>State of Pennsylvania<br>70 Pine St.<br>New York, NY 10270 | Insurance policy issued by The Insurance Company of the State of Pennsylvania (Foreign Workers' Compensation). |
| Liberty Mutual Insurance Company<br>15700 W. Bluemound Rd.<br>P.O. Box 0915<br>Milwaukee, WI 53008-0915 | Insurance policy issued by Liberty Mutual Insurance Company (Workers' Compensation). |
| Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA<br>Attn: Megan L. Christol | Insurance Policy issued by Liberty Mutual Insurance Company (Deductible Reimbursement Bond). |
| APW Ltd. 401(k) Plan<br>N22 W23685 Ridgeview Parkway West<br>Waukesha, WI 53188-1013<br>Attention: Susan Hrobar | 401(k) Plan.<br>7/11/00 |

| | |
|---|---|
| Connell Limited Partnership<br>One International Place<br>Boston, MA 02110<br><br>APW Ltd.<br>N22 W23685 Ridgeview Parkway West<br>Waukesha, WI 53188-1013<br><br>APW Mayville, Inc.<br>N22 W23685 Ridgeview Parkway West<br>Waukesha, WI 53188-1013 | Asset Purchase Agreement by and between Cornell Limited, APW Ltd and APW Mayville, Inc. (for the purchase of the assets of Mayville Metal Products Division), dated January 23, 2001 and Amendment No. 1 thereto dated February 16, 2001. |
| Kaiser Permanente<br>Kaiser Foundation Health Plan, Inc.<br>California Division – Southern California Area<br>393 East Walnut Street<br>Pasadena, CA 91188 | Group Health Insurance Agreement (HMO). |
| American Specialty Health Plans<br>P.O. Box 509002<br>San Diego, CA 92150-9002 | Group Subscriber Agreement for Chiropractic Services and Acupuncture Services. |
| Eye Care Plan of America<br>7776 S. Pointe Parkway West, Suite 150<br>Phoenix, AZ 85044-5424 | Access Program Agreement for preferential pricing for the sale of eyewear.<br>8/10/98 |
| Carilion Health Plans, Inc.<br>100 Campbell Avenue<br>Roanoke, VA 24011 | Group Agreement for Medical Insurance (HMO and POS). |
| Connecticut General Life Insurance Company<br>11001 N. Black Canyon Hwy.<br>Phoenix, AZ 85029 | Administrative Services Only Agreement. |
| Connecticut General Life Insurance Company<br>11001 N. Black Canyon Hwy.<br>Phoenix, AZ 85029 | Stop Loss Agreement. |
| CIGNA Health Care of Texas, Inc.<br>Two Riverway, Suite 1200<br>Houston, TX 77056 | Group Service Agreement (HMO). |
| CIGNA Health Care of New Jersey, Inc.<br>100 Enterprise Drive, Suite 610<br>Rockaway, NJ 07866 | Group Service Agreement (HMO). |
| Hartford Life and Accident Insurance Company<br>200 Hopmeadow Street,<br>Simbury, CT 06089 | Insurance Policies for short term and long term disability. |

| | |
|---|---|
| Hartford Life and Accident Insurance Company<br>200 Hopmeadow Street,<br>Simbury, CT 06089 | Business Travel Accident Insurance Plan. |
| Hartford Life and Accident Insurance Company<br>200 Hopmeadow Street,<br>Simbury, CT 06089 | Life, Supplemental Life and Accidental Death and Dismemberment insurance policy. |
| Unicare Life & Health Insurance Company<br>4553 La Tienda Drive<br>Thousand Oaks, CA 93162 | Group Insurance Policy (Medical PPO). |
| Delta Dental Plan of Wisconsin<br>P.O. Box 828<br>Stevens Point, WI 54481 | Third Party Administrator Agreement for dental insurance plan. |
| Delta Dental Plan of Wisconsin<br>P.O. Box 828<br>Stevens Point, WI 54481 | Contract to Provide Dental Benefits. |
| Fallon Community Health Plan, Inc.<br>630 Plantation Street<br>Worchester, MA 01605 | Group Service Agreement for HMO Plan. |
| Actuant Corporation<br>61010 N. Baker Road<br>Milwaukee, WI 53209 | Insurance Matters Agreement by and between Applied Power Inc. and APW Ltd., dated July 21, 2000 permitting APW Ltd. to share in some of the benefits of Applied Power Inc.'s insurance policies and the assumption of certain of Applied Power Inc.'s responsibilities under such policies. |
| Actuant Corporation<br>61010 N. Baker Road<br>Milwaukee, WI 53209 | Confidentiality and Nondisclosure Agreement by and between Applied Power Inc. and APW Ltd., dated July 21, 2000. |
| Onsite Management Services<br>921 Elkridge Landing Road<br>Suite 200<br>Linthicum, MD 21090 | Primary Services Agreement for temporary labor jobs and related services. |
| Pacific Starr – Danielson LLC<br>659 Sierra Madre Villa, Ave.<br>Suite 108<br>Pasadena, CA 91107<br>Attn: John Pipa | Assignment and Assumption Agreement /Lease Guaranty 7/31/00.<br>14100 Danielson Street<br>Poway, CA – Mfg.<br>assembly and office |
| Asset XV Holdings, Co., LLC<br>c/o JH Management Corp.<br>Room 520<br>1 International Place<br>Boston, Ma. 02110 | Participation, Lease and Loan Agreement/Limited Guaranty 7/31/00.<br>28545 Livingston Avenue<br>West Valencia |

| | |
|---|---|
| Power Applied Four (DE) QRS 14-34, Inc.<br><br>Power (DE) QRS 14-34 Inc.<br>c/o W. P. Carey & Co., Inc.<br>50 Rockefeller Plaza, 2nd Floor<br>New York, N.Y. 10020 | Deed and Lease Agreement/Guaranty and Suretyship Agreement 7/31/00.<br><br>"Various Addresses" |
| The Robert Wells Family Partnership and Twedt Family Partnership<br>c/o Robert Wells Family Partnership<br>3500 Ocean Boulevard<br>Corona Del Mar, CA 92625<br>Attn.: Robert Wells | Assignment and Assumption Agreement/Notice of Assignment and Guaranty – 8/5/99.<br>2100 East Orangewood<br>Anaheim, CA – Mfg. |
| Fab–Rite LLC<br>3500 Ocean Boulevard<br>Corona Del Mar, CA 92625<br>Attn.: Robert L. Wells | Assignment and Assumption Agreement/Notice of Assignment of Guaranty, dated 1/1/99.<br>12250 Industry Street<br>Garden Grove |
| APW Ltd (f/k/a Wright Line)<br><br>TCW Realty Fund VA Holding Company and TCW Realty Fund VB<br>865 South Figueroa Street, Suite 3500<br>Los Angeles, CA 90017 | Assignment and Assumption Agreement/Notice of Assignment and Guaranty 1/1/99.<br>525 East South Street<br>Building B<br>Anaheim, CA |
| Miller Dickerman Investments<br>2121 Avenue of the Stars, #1230<br>Los Angels, CA 90067 | Assignment and Assumption Agreement.<br>17032 Armstrong Avenue<br>Irvine, CA |
| JTT Associates<br>19 Par Lane<br>Hudson, NH 03051 | Assignment and Assumption Agreement.<br>27 Executive Drive<br>Hudson, NH |
| JTT Associates<br>19 Par Lane<br>Hudson, NH 03051 | Assignment and Assumption Agreement.<br>20 Executive Drive<br>Hudson, NH |
| Riverview Industrial Park Associates<br>c/o H.J. Stabile & Son, Inc.<br>21 Manchester Street<br>Merrimack, NH 03054 | Assignment and Assumption Agreement.<br>12 Executive Drive<br>Hudson, NH |
| Gateway Frontier Properties, Inc.<br>c/o TA Associates Realty<br>28 State Street, 10th Floor<br>Boston, MA 02109 | Lease/Guaranty 12/22/97.<br>9011 Tuscany Way<br>Austin, TX |
| Garland Gateway East, Inc.<br>201 Mission Street<br>San Francisco, CA 94105 | Lease/Guarantee of lease – 10/24/00.<br>3801 Regency Crest Drive<br>Garland, TX |
| 160 Gold Star LLC<br>c/o Mesiro Realty Sale-Leaseback, Inc.<br>350 North Clark Street, Suite 300<br>Chicago, IL 60610 | Assignment and Assumption Agreement. |

| | |
|---|---|
| Louncil Ltd.<br>Bank of Ireland Head Office<br>Lower Baggot Street<br>Dublin 2 | Property Put Option Agreement. |
| Hulbay Ltd.<br>Brighton House<br>121 Lower Rathmires Road<br>Dublin | Agreement for Lease 10/01. |

# EXHIBIT E
# APW, LTD.
## SUMMARY OF TERMS FOR
## INVESTOR RIGHTS AGREEMENT

*May 8, 2002*

*This summary of terms summarizes the principal terms of a proposed Investor Rights Agreement (the "Agreement") to be executed upon the effective date of a plan of reorganization under Chapter 11 of the U.S. Bankruptcy Code (the "Reorganization") of APW, Ltd., among a successor to APW, Ltd. (such successor, the "Company") and certain holders of capital stock of the Company.*

| | |
|---|---|
| **Company:** | Successor to APW, Ltd. ("APW") pursuant to the Reorganization (the "Company"). |
| **Investors:** | The "Investors" will include each Lender under APW's Existing Credit Agreement who owns common shares of the Company ("Common Shares") upon effectiveness of the Reorganization, and APW Warrants and holders of the DIP Facility Warrants who is a party to the Investor Rights Agreement. |
| **Preemptive Rights:** | Each Investor will be entitled to participate pro rata in issuances of Company securities other than in registered offerings, acquisitions of businesses or assets from unaffiliated parties, or strategic transactions with unaffiliated parties, and subject to other customary exceptions. |
| **Board of Directors:** | The Company's Board of Directors (the "Board") shall at all times be comprised of seven (7) directors, although this figure would increase to nine (9) directors if RBS becomes entitled to designate a second representative pursuant to sub-clause (ii) below. The Investors shall vote their Common Shares at all times to elect directors as follows: |
| | (i) three representatives designated by the holders of the shares issued to Oaktree Capital Management, L.L.C. and its affiliates ("Oaktree") upon effectiveness of the Reorganization so long as such shares represent not less than 35% of the fully-diluted Common Shares; two representatives so long as such shares represent not less than 30% of the fully-diluted Common Shares; and one representative so long as such shares represent not less than [20]% of the fully-diluted Common Shares; |

(ii)    one representative designated by the holder of shares issued to The Royal Bank of Scotland ("RBS") upon effectiveness of the Reorganization so long as such shares represent not less than [20]% of the fully-diluted Common Shares.  This right to designate a director shall be transferable to any subsequent transferee of RBS's shares in the Company, provided that the shares transferred continue to represent not less than [20]% of the fully-diluted Common Shares.  If the shares held by RBS represent 30% or more of the fully-diluted Common Shares, RBS shall be entitled to appoint 2 representatives and if its shares represent not less than 35% of the fully-diluted Common Shares, it shall be entitled to designate 3 representatives;

(iii)    the Chief Executive Officer of the Company (the "CEO");

(iv)    one director domiciled in Barbados who is designated by the CEO and acceptable to the other directors; and

(v)    so long as shares held by Investors other than Oaktree and RBS and their affiliates represent 20% or more of the fully-diluted Common Shares, one director designated by [to be determined by other Lenders].

As requested at any time by any party entitled to designate directors as contemplated hereby, each Investor shall be obligated to vote its Common Shares, at stockholder meetings or by written consent, to elect directors in accordance herewith and to remove directors only as follows: (x) at such time as any person ceases to be CEO, such person shall be removed as a director and the person previously elected pursuant to clause (iv) above shall also then be removed (unless a majority of the remaining directors elect otherwise pending designation of a director pursuant to clause (iv) upon election of a new CEO) and (y) any director previously designated pursuant to clause (i), (ii) or (v) above, respectively, shall be removed at such time, and only at such time, as the Investor(s) described in such clause either request such removal or cease to be entitled to designate such director in accordance with such clause.  Vacancies on the Board at any time may be filled by holders of a majority of the Common

2

Shares.

Any Investor holding 10% or more of the fully-diluted Common Shares shall be entitled to designate one representative to attend Board and Board committee meetings as an observer. This right shall be in addition to any shareholder's right to designate a director on the basis outlined above.

For all purposes of this summary of terms, "fully-diluted" Common Shares shall exclude Common Shares issuable upon exercise of warrants issued to APW, Ltd.'s pre-petition stockholders (the "Original Shareholder Warrants") or employee options. Pursuant to the terms of the Plan, the Original Shareholder Warrants and the employee options are to be cancelled.

**Alternate Director:**

If permitted under Bermuda law, any director of the Company designated pursuant to clause (i), (ii) or (iv) above shall have the right to nominate an alternate director to attend Board meetings in his or her place, such alternate having all the voting powers of the original director at such Board meeting.

**Conduct of Board Meetings:**

Directors shall be given at least 5 business days notice of regularly scheduled meetings, and at least 24 hours notice of special meetings, and shall be permitted to participate by telephone in any special meeting or otherwise as determined by the Board if attendance in person is impracticable, unless such telephonic participation causes adverse tax consequences. The Bye-Laws of the Company shall be amended, in accordance with Bermuda law, to effectuate the foregoing.

If any director is interested in any transaction which is proposed for approval by the Board, the Board shall delegate approval of such transaction to a subcommittee of the Board comprised solely of directors not interested in such transaction.

**Indemnity to and Compensation of Directors:**

The Company shall, to the extent necessary and legally permissible, provide the directors with adequate D&O coverage, and shall indemnify them out of its own assets, against any liability they incur as a result of acting as a director, other than through fraud, gross negligence or willful misconduct. The Company shall

3

pay director fees at market rates and reimburse directors for expenses reasonably incurred in connection with service on the Board.

**Co-Sale Rights:**

If in any transaction or series of related transactions (other than Rule 144 sales or registered sales, and other than certain transfers to affiliates) prior to consummation of a Significant Market Liquidity Event any Investor or group of Investors acting together (the "Transferring Investor") transfers Common Shares representing more than 10% of the fully-diluted Common Shares, each other Investor shall be entitled to participate in such transaction(s) with the Transferring Investor on a pro rata basis (based upon holdings of Common Shares). For purposes of this summary of terms, "Significant Market Liquidity Event" means _____.

**Right of First Offer:**

Prior to the consummation of a Significant Market Liquidity Event, each transfer of interests in Company stock (other than in Rule 144 sales by affiliates of the Company after the first anniversary of the effective date of the Reorganization, registered sales or an Approved Sale, as defined below, and other than certain transfers to affiliates) will be subject to rights of first offer exercisable by the Company (subject to the restrictions contemplated below), and, to the extent the Company fails to exercise such rights, by any Investor who, collectively with its affiliates, holds 10% or more of the fully-diluted Common Shares. If, in exercising such rights, such Investors elect to purchase more stock than proposed to be transferred, stock will be allocated to such Investors pro rata based upon holdings of Common Shares. Neither the Company nor any Investor may exercise the right of first offer unless the parties exercising such right elect, in the aggregate, to purchase all of the shares being offered. The Company and the Investors shall have an aggregate of [45] days in which to elect to exercise the right of first offer (the "Offer Period") and an aggregate of [60] days in which to close any purchase pursuant to such right. If the right of first offer is not exercised, the applicable Investor may sell the shares that were so offered to a third party within [60] days after the first to occur of expiration of the Offer Period or receipt of notice of nonexercise of the right, provided that such Investor may sell only the full

4

amount of securities offered and at not less than the price previously disclosed to the other Investors. No Investor will transfer any interest in any Common Shares for consideration other than cash, cash equivalents, freely transferable marketable securities or other Company securities, other than certain transfers to affiliates or in an Approved Sale (as defined below).

***Sale of the Company:***   If the Board and Investors holding a majority of the Common Shares approve a sale of all or substantially all of the Company's assets, an amalgamation, a scheme of arrangement, a merger or a sale or exchange of all or substantially all of the Common Shares (each, an "<u>Approved Sale</u>"), each of the Investors shall take all necessary and desirable actions to consummate, and shall not dissent from, such Approved Sale.

***Actions of the Company Requiring Super-Majority Investor Approval:***   Prior to a Significant Market Liquidity Event, the Company shall not, without the approval of [Investors holding 66 2/3% or more of the fully-diluted Common Shares held by Investors / holders of 66 2/3% or more of the fully-diluted Common Shares], directly or indirectly redeem, purchase or otherwise acquire, or permit any subsidiary to redeem, purchase or otherwise acquire, any of the Company's equity securities (including, without limitation, Common Shares, warrants, options and other rights to acquire equity securities), except (a) purchases from terminated employees, (b) purchases pursuant to offers made to Investors pro rata according to holdings, (c) where the consideration paid in such transaction is Company equity securities, or (d) as otherwise expressly contemplated by the Agreement. This provision may not be amended or waived without the approval of [Investors holding 66 2/3% or more of the fully-diluted Common Shares held by Investors / holders of 2/3% or more of the fully-diluted Common Shares].

***Actions of the Company Requiring Super-Majority Board Approval:***   Prior to a Significant Market Liquidity Event, approval of 66 2/3% of directors (i.e., 5 of the 7 directors) shall be required for any of the following:

(i)     [directly or indirectly redeem, purchase or otherwise acquire, or permit any subsidiary to redeem, purchase or otherwise acquire, any of the Company's equity securities (including, without limitation, Common Shares, warrants, options and other rights to acquire equity securities), except (a) purchases from

5

terminated employees, (b) purchases pursuant to offers made to Investors pro rata according to holdings, (c) where the consideration paid in such transaction is Company equity securities, or (d) as otherwise expressly contemplated by the Agreement;]

(ii)     acquisition or disposal of a material asset(s),

(iii)     removal or appointment of the Chief Executive Officer or Chief Financial Officer of the Company;

(iv)     any transaction with any affiliate of any director of the Company, or of any Investor holding (collectively with its affiliates) ___% or more of the fully-diluted Common Shares other than on terms no less favorable than could be obtained in arms-length negotiations with an unaffiliated party (for purposes of this provision, an "affiliate" of such a director or Investor will not include the Company itself or any entity under the Company's control); or

(v)     any material change to the nature of the Company's business.

**Certain Other Restrictions:**     Prior to a Significant Market Liquidity Event and so long as RBS and its affiliates collectively hold 50% or more of the Common Shares held by such persons on the effective date of the Reorganization, if the Company's charter is amended after such effective date to increase the number of authorized shares, then unless such charter amendment has been approved by a majority of the Board including the director designated by RBS (or if RBS at such time is not entitled to designate a director, by 66 2/3% of directors (i.e., 5 of the 7 directors)), the Company shall not issue Common Shares unless such charter amendment or issuance has been approved or ratified by [Investors holding 75% or more of the fully-diluted Common Shares held by Investors / holders of 75% or more of the fully-diluted Common Shares] or by a majority of the Board including the director designated by RBS or by 66 2/3% of directors (i.e., 5 of the 7 directors).

Prior to the consummation of a Significant Market Liquidity Event, the Company will not pay any management charges, directors fees or similar payments to the Company's directors (except as contemplated

6

above), or pay any dividend, or any other distribution, to its shareholders, except to its shareholders pro rata based on fully-diluted holdings of Common Shares.

Prior to the consummation of a Significant Market Liquidity Event, the Company shall not issue and sell any equity securities to any affiliate of the Company (other than pursuant to the exercise of preemptive rights in connection with an issuance of securities to a third party), or sell any equity securities for aggregate consideration in excess of $25,000,000, unless the Company shall have received from a valuation firm acceptable to the Board an opinion to the effect that such sale is fair from a financial point of view to the Company.

*Registration Rights:*  Subject to customary indemnification, limitation and termination provisions:

(i)    Demand Rights:   Any Investor, or Investors acting together for the purpose of exercising demand rights, who collectively with its (their respective) affiliates, hold(s) in the aggregate 20% or more of the fully-diluted Common Shares shall have one demand registration right.   An Investor acting together with other Investors for the purpose of exercising demand rights may not participate in more than one initiation of a demand (provided that exercise of piggyback or Form S-3 registration rights as described below shall not be deemed exercise of demand rights for such purpose). An Investor may exercise such a demand right only if it reasonably anticipates that the securities to be included therein will have an aggregate price to the public of at least $_____.

(ii)    Initial Public Offering.  No initial public offering shall be undertaken without Board approval.

(iii)    Piggyback Rights:   The Investors shall have unlimited "piggyback" registration rights.

(iv)    Form S-3:  Each Investor who, collectively with its affiliates, holds 20% or more of the fully-diluted Common Shares may initiate an unlimited number of registrations on Form S-3, including shelf registration, if the Company is eligible to use such form; provided that no more than two registrations become effective in any

7

12-month period; and provided that the Investor requesting such registration must reasonably anticipate that the securities to be included therein will have an aggregate price to the public of at least $_____.

(v)    Priority:  The Company will have priority on all registrations it originates.  Investors will be entitled to participate in registrations pro rata based on holdings of Common Shares (i.e., no priority for demanding party), subject to cutback by managing underwriters; provided that any Investors which are subjected to a cutback of __% or more of the shares they have requested to be included in a registration effected pursuant to their exercise of a demand right shall retain such demand registration right.

(vi)    Expenses:   The Company shall bear the registration expenses (exclusive of underwriting discounts and commissions) of all such demand, piggyback and Form S-3 registrations.  The Company shall also pay the fees and expenses of one special legal counsel to represent all participating shareholders.

(vii)    Lockup: Each Investor will agree not to publicly sell any stock during the 7 days prior to, and during the 180 day period beginning on, the effective date of the initial (90 day period for any other) underwritten public offering of the Company's securities, except as part of such offering if permitted by the Board and managing underwriters.

**Authorized Shares:**    Upon effectiveness of the Reorganization, the Company's charter shall authorize for issuance that number of shares equal to (i) the number of Common Shares then issued or outstanding at such time, plus (ii) the maximum number of Common Shares issuable upon exercise of warrants or other rights  then issued or outstanding, plus (iii) 25% of the sum of clause (i) and clause (ii) (excluding from clause (ii) the Original Shareholder Warrants).   The charter may not be amended to increase authorized shares except as described above.

**Successors:**    No transfer of any interest in any Company stock (other than in a Rule 144 sale or registered sale) by any party to the Agreement shall be effected unless prior thereto

8

the transferee thereof has entered into the Agreement and undertaken the obligations thereunder of the transferor. Any such successor shall inure to the rights and benefits of its transferor hereunder in respect of the shares so transferred, including without limitation the rights to designate directors, subject to the limitations described above applied to such transferees in the same manner applicable to the transferors thereof.

*Waiver and Amendment:*    Provisions contemplated hereby for the express benefit of Oaktree or RBS may be amended or waived with the approval of Oaktree or RBS, respectively, and the Company. Investors holding a simple majority of the fully-diluted Common Shares may waive or amend any other provision of the Agreement, except (i) Investors holding 66 2/3% or more of the fully-diluted Common Shares [held by Investors] must approve any waiver or amendment of (a) that the Co-Sale Rights which diminishes the right of Investors to participate in sales contemplated thereby, or (b) that the Rights of First Refusal which causes to be more onerous the obligations of an Investor transferring Common Shares thereunder, (ii) that such simple majority must include RBS and Oaktree in respect of any amendment or waiver of the provisions described above under "Preemptive Rights," "Board of Directors," "Alternate Director," "Co-Sale Rights," "Sale of the Company," "Certain Other Restrictions," or "Successors;" (iii) RBS or [Investors holding 75% or more of the fully-diluted Common Shares held by Investors / holders of 75% or more of the fully-diluted Common Shares] must approve any amendment or waiver of the provisions above requiring super-majority board approval; and (iv) as otherwise specifically provided above.

9



**Exhibit "B"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

In re                                                :

                                                     **Chapter 11**
**VERO ELECTRONICS INC. and**                        :       **Case No. 02-12334 (PCB)**
**APW LTD.,**

                                                     :       **(Jointly Administered)**

                              **Debtors.**

                                                     :

-------------------------------------------------------X

## AMENDED AND RESTATED JOINT PLAN OF
## REORGANIZATION OF VERO ELECTRONICS INC. AND APW LTD.
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED

   Vero Electronics Inc. and APW Ltd., as debtors, propose the following chapter 11 plan of reorganization pursuant to section 1121(a) of title 11, United States Code:

### I. Introduction

   **A. Plan Defined Terms.** Unless the context otherwise requires, the terms specified below have the following meanings (such meanings to be applicable equally to both the singular and plural):

   1. *Agent Banks* means the Administrative Agents under the Multicurrency Credit Facility and the U.K. Credit Facility.

   2. *Allowed Administrative Expense, Allowed Claim, or Allowed Equity Interest* means an administrative expense, claim, or equity interest, as the case may be, that is allowed or deemed allowed pursuant to the Plan or sections 502, 503, or 1111 of the Bankruptcy Code.

   3. *APW* means APW Ltd., a Bermuda company.

   4. *APW Common Shares* means the authorized common shares that will be issued by Reorganized APW.

   5. *APW Distribution Pool* shall have the meaning set forth in Section III.N.5 of the Plan.

   6. *AWP* means AWP Ltd., a newly formed Bermuda company, which shall be deemed a successor of APW. On or as promptly as possible subsequent to the Effective Date, Old APW shall change its name, and AWP will change its name to "APW Ltd."

19. *Debtors* means APW and Vero.

20. *Debtors in Possession* means the Debtors in their capacity as debtors in possession in the Reorganization Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

21. *DIP Facility* means any working capital facilities that the Debtors, as Debtors in Possession enter into during the Reorganization cases, as approved by the Court, and any amendments, modifications or supplements thereof.

22. *DIP Facility Warrants* means any warrants to purchase up to 303,030 APW Common Shares, representing up to 20% of the APW Common Shares, on a fully diluted basis, having an exercise period of three (3) years, and an exercise price equal to $0.010.02 per share, that are issued pursuant to the terms of the DIP Facility. Pursuant to the DIP Facility, an additional commitment fee of $30,30360.606 is owed by APW, which will be deemed a prepayment of the exercise price in respect of the DIP Facility Warrants. As a result of the deemed prepayment discussed above, no additional cash payment will be required from the holders thereof in connection with the exercise of the DIP Facility Warrants.

23. *Disputed Administrative Expense, Disputed Claim, or Disputed Equity Interest* means any administrative expense, claim, or equity interest (a) to the extent neither allowed nor disallowed pursuant to the Plan or a Final Order nor deemed allowed pursuant to the Plan or sections 502, 503, or 1111 of the Bankruptcy Code or (b) for which a proof of claim or interest or (in the case of an administrative expense) a motion for payment has been filed with the Court, to the extent that any party in interest has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.

24. *Distribution Pool* means the APW Distribution Pool or the Vero Distribution Pool, as applicable.

25. *Effective Date* means the first Business Day on which each condition specified in Section IV.B of the Plan shall have been satisfied or waived.

26. *Existing Lender Warrants* means the warrants to purchase Old APW Common Shares issued to the Senior Lenders prior to the Commencement Date.

27. *Final Order* means an order of the Court that is in effect and is not stayed, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Court shall have been determined

60. *Senior Lender* means any of the parties to any of the Senior Credit Facilities (other than the Debtors and their affiliates), including Bank of America, as administrative agent.

61. *Shareholders Agreement* means an agreement by and among certain of holders of the APW Common Shares issued pursuant to the Plan, and the DIP Facility Warrants (but not the New Management Option Plan), containing the terms and conditions set forth in Exhibit E to the Plan, a form of which will be filed as part of a Plan Supplement.

62. *Subsequent Distribution Date* means the Business Day after the end of a fiscal quarter after the fiscal quarter in which the Effective Date occurs and the tenth Business Day after the end of each subsequent fiscal quarter.

63. *Tax Rate* means (i) as to the Internal Revenue Service, the interest rate equal to the underpayment rate specified in 26 U.S.C. 6621 (determined without regard to 26 U.S.C. 6621(c)) as of the Effective Date, and (ii) as to all other taxing authorities, a fixed annual interest rate of eight percent (8%).

64. *U.K. Credit Facility* means, collectively (a) that certain Agreement dated October 24, 1995, as amended, by and among APW Electronics Group PLC (formerly Vero Group PLC), certain affiliates thereof, and The Royal Bank of Scotland, (b) that certain Multi-Line Facility Agreement dated April 20, 2000, as amended, by and among APW Enclosure Products and Systems Limited, certain affiliates thereof, and National Westminster Bank PLC, (c) Deed Constituting Floating Rate Unsecured Loan Notes 2008, dated June 19, 1998, as amended, by Applied Power Limited and National Westminster Bank PLC, (d) Deed Constituting Floating Rate Unsecured Loan Notes 2003, dated October 13, 1998, as amended, by APW Enclosure Systems Limited and National Westminster Bank PLC, and (e) Counter-Indemnity Agreement, dated on or about ~~May~~April 25, 2001, by and among APW and National Westminster Bank PLC, as amended by that certain Payment Agreement dated June 28, 2002, between, among others, APW and National Westminster Bank, PLC, and (f) all notes, guaranties, pledges, and other agreements and documents given or issued pursuant thereto or in connection therewith.

65. *Vero* means Vero Electronics Inc., a New York corporation.

66. *Vero Common Stock* means the shares of common stock authorized to be issued by Vero.

67. *Vero Distribution Pool* shall have the meaning set forth in Section III.N.5 of the Plan.

**B.     Bankruptcy Code Terms.** "Allowed," "case," "claims," "confirm," "confirmation," "debtor," "governmental unit," "impaired," and other capitalized or

6. Class 6:  Intercompany Claims.

  a. *Classification*. Class 6 consists of all allowed claims against the Debtors held by any affiliates of the Debtors.

  b. *Treatment*. On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, each allowed claim in Class 6 shall be reinstated and rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, except to the extent that the applicable Debtors or Reorganized Debtors, as the case may be, and the holder agree to a different treatment.

  c. *Voting*. Class 6 is not impaired. Pursuant to section 1126(f) of the Bankruptcy Code, the holders of claims in class 6 are conclusively presumed to have accepted the Plan.

7. Class 7 – Securities Litigation Claims

  a. *Classification*. Class 7 consists of all securities litigation claims.

  b. *Treatment*. In accordance with section 510(b) of the Bankruptcy Code, Class 7 claims shall be subordinated to all other claims. On the later of the Effective Date and the date on which such claim is allowed, or in each case as soon thereafter as practicable, each holder of an allowed claim in class 7 shall receive such proceeds, if any, that may be under the Debtors' directors' and officers' liability policy (which will be assumed and assigned as provided in the Plan), subject to the terms and conditions of such policy. Notwithstanding section 1141 of the Bankruptcy Code, the discharge of the Securities Litigation Claims shall not operate as an injunction against the prosecution of such claims against Old or Reorganized APW to a final judgment for the limited purpose of enabling the holder of an allowed Class 7 claim to ~~recovery~~recover any such judgment ~~against APW~~ solely from such proceeds, if any. In all other respects, the Debtors, the Reorganized Debtors, Old APW and their respective properties are released and discharged from any and all liabilities and obligations, if any, to holders of Securities Litigation Claims. Nothing in the Plan, and the Reorganized Debtors' and Old APW's release and discharge~~, if any, and all obligations in respect of Securities Litigation Claims~~ (a) will, or will be deemed to, satisfy or release or discharge such claims against any non-Debtor or non-Reorganized Debtor defendants or (b) enjoin the prosecution of such claims against non-Debtor or non-Reorganized Debtor defendants in accordance with applicable non-bankruptcy law. Any Securities Litigation Claims, whether or not listed on the Schedules or evidenced by a filed proof of claim, shall be determined and liquidated in the administrative or judicial tribunal(s) in which it is pending on the Effective Date or, if no action was pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance